**STATE of Utah, Plaintiff and Respondent,**

v.

**John TROY, Defendant and Appellant.**

**No. 18738.**

Supreme Court of Utah.

Aug. 29, 1984.

Lynn R. Brown, Salt Lake Legal Defender, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., J. Stephen Mikita, Asst. Atty. Gen., Ted Cannon, County Atty., Michael J. Christensen, Asst. County Atty., Salt Lake City, for plaintiff and respondent.

RICHARD C. DAVIDSON, District Judge:

Defendant appeals from his jury conviction of aggravated arson and insurance fraud, both second degree felonies. He

claims that prosecutorial misconduct prejudiced the jury against him.

Shortly past noon on July 22, 1980, a vacant house in Salt Lake County exploded and burned. The house was owned by defendant and his exwife and was under court order to be sold, with the equity to be divided 65 percent to her and 35 percent to him. Until the house was sold, he was to make mortgage and other payments and to maintain the house. It was vacant at the time of the fire. The fire was quickly extinguished, and a subsequent investigation led to the conclusion that the fire was arson caused. Defendant later filed a claim of loss for fire damage. He was subsequently charged with both aggravated arson and insurance fraud.

The evidence presented at trial showed that the explosion occurred when natural gas, escaping from an uncapped nipple, was ignited by a pilot light. The explosion was followed immediately by the fire. Arson investigators testified that an accelerant, probably gasoline, had been placed in the house. Defendant was in the house at approximately 7:30 on the morning of the fire. He visited the house nearly every day. Defendant was not at the house thereafter until after the fire. A quantity of gasoline was found in a container in his truck. He was employed as a handyman and home repairman and had been working during the time of the fire. No direct evidence was presented that linked him directly to the fire, since all evidence was circumstantial. Evidence of motive showed that he was in poor financial condition, being several payments behind and under a court order concerning the house.

The defense argued that defendant had no motive to burn the house since he would gain much more through a sale of the property at its appraised value rather than through the insurance proceeds. Defendant did not testify in his own behalf.

The defense now argues that the prosecutor caused prejudicial error through misconduct. As evidence of such misconduct, the defense points out several statements made to the jury by the prosecution.

During opening statements, the prosecutor introduced the case by stating, "I'm the prosecutor in the case of the State of Utah versus John Troy also known as John McMillian." This statement was made despite the prosecutor's knowledge that the defendant had changed his name and was not using his former name as an alias. Later in the opening statement, the prosecutor stated, "[A]t the time Mr. Troy was here in Salt Lake County, he was under an identity—evidence will show that he was under an identity provided by the federal —." Objection was made, and the court admonished the jury to disregard the statement. At the close of the State's opening argument, a motion for mistrial was made outside the presence of the jury, citing prejudice caused by the prosecutor's statements that defendant used an alias and that defendant was a protected witness. At that time, the prosecutor admitted that the second name of the defendant was his former legal name and not an alias. Nonetheless, the motion was denied.

During the questioning of an attorney whose firm had been assisting defendant, the prosecutor asked the attorney, "[A]nd did he also represent him (defendant) in various criminal matters." Objection was made and sustained.

In closing arguments, the prosecutor commented on the lack-of-motive defense. "Whether he's rational in his business dealings, you don't have to presume at all. And we know that criminals have all kinds of irrational behavior." Objection was made and sustained. The prosecutor continued, "You know people do things for odd reasons. Hinckley is a classic example."[1] Objection was again made and sustained. After closing arguments and outside the presence of the jury, another motion for mistrial was made and denied.

---

1. Presumably, this referred to John Hinckley and his attempted assassination of President Ronald Reagan on March 30, 1981.

Again during closing arguments, the prosecutor told the jury, "[U]se your experience, and in talking to one another, don't put your common sense aside. If you have been involved in a situation, speak up, talk about it, deliberate it." Objection was made again, and the jury was admonished to disregard the statements.

The question presented on this appeal is whether the prosecutor's conduct requires a reversal. We believe it does.

■ The prosecutor committed misconduct first when he made statements that referred to defendant's past. In his opening statement, reference to an alias very likely may have led the jury to speculate as to defendant's reason for using an alias. Additionally, statements about the defendant's being in Salt Lake County under a federal identity could have had the same effect. The prosecutor knew that defendant had changed his name. His reference to defendant's former legal name as though it were an alias was totally unnecessary and served no valid purpose. In addition, the reason defendant was living in Salt Lake County was completely irrelevant. The prosecutor's attempt to mention the Federal Witness Program was a clear attempt to bias the jury. The later question asked of defendant's former attorney about defendant's "various criminal matters" was another attempt to bias the jury.

■ The prosecutor also committed misconduct when he compared the defendant to Hinckley. Such a comparison could have no effect other than to prejudice the jury. And again when he suggested to the jury that they consider and "deliberate" matters outside the evidence, he was engaging in misconduct. The question is whether his misconduct deprived defendant of a fair trial.

The leading case in this area is *State v. Valdez*, 30 Utah 2d 54, 513 P.2d 422 (1973). In *Valdez*, this Court established the rule governing reversals for improper statements of counsel.

The test of whether the remarks made by counsel are so objectionable as to merit a reversal in a criminal case is, did the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict, and were they, under the circumstances of the particular case, probably influenced by those remarks. *State v. Valdez*, 30 Utah 2d at 60, 513 P.2d at 426. *See also State v. Johnson*, Utah, 663 P.2d 48 (1983); *State v. Creviston*, Utah, 646 P.2d 750 (1982); *State v. Gaxiola*, Utah, 550 P.2d 1298 (1976). Thus it is a two-step test that must be applied "under the circumstances of the particular case . . . ."

■ Applying step one, we see that the prosecutor was clearly calling attention to matters outside the evidence in referring to defendant's alias, his being a federal witness, and his being involved in "various criminal matters" and in comparing him to "criminals [who] have all kinds of irrational behavior. . . . Hinckley is a classic example." In addition, counsel suggested to the jury that it consider and deliberate personal experiences. Step one of the *Valdez* test was clearly met.

■ Step two is more difficult and involves a consideration of the circumstances of the case as a whole. In making such a consideration, it is appropriate to look at the evidence of defendant's guilt.

■ "If proof of defendant's guilt is strong, the challenged conduct or remark will not be presumed prejudicial." *State v. Seeger*, 4 Or.App. 336, 479 P.2d 240 (1971). Likewise, in a case with less compelling proof, this Court will more closely scrutinize the conduct. If the conclusion of the jurors is based on their weighing conflicting evidence or evidence susceptible of differing interpretations, there is a greater likelihood that they will be improperly influenced through remarks of counsel. Indeed, in such cases, the jurors may be searching for guidance in weighing and interpreting the evidence. They may be especially susceptible to influence, and a small degree of influence may be sufficient to affect the verdict. Counsel is obligated

487

in such cases to avoid, as far as possible, any reference to those matters the jury is not justified in considering.

In this case, there was not compelling proof of defendant's guilt. The jury could have found either way. Consequently, we are compelled to find that the second step of the *Valdez* test has been met. The jurors "probably were influenced by" the remarks of the prosecutor. While the trial court properly attempted to correct the errors, the potential for harm, the probability for harm, and the continued efforts of the prosecutor were too flagrant to be corrected.

The defense raises other issues, but it is not necessary for us to consider them.

Accordingly, the judgment of the trial court is reversed, and the case is remanded for a new trial.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.

ZIMMERMAN, J., does not participate herein.

RICHARD C. DAVIDSON, District Judge, sat to fill a vacancy on the Court.