**STATE of Utah, Plaintiff and Appellee,**

v.

**Richard Chandler THOMAS, Defendant and Appellant.**

No. 870217.

Supreme Court of Utah.

June 28, 1989.

446

Lynn R. Brown, Joan C. Watt, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Sandra L. Sjogren, Salt Lake City, for plaintiff and appellee.

HOWE, Associate Chief Justice:

Defendant was tried and convicted of rape, a first degree felony, in violation of Utah Code Ann. § 76–5–402 (1978, Supp. 1988). During the trial, a police officer was permitted to testify to statements made to her by the victim during an interview held between one and two hours after the incident. Defendant objected to the admission of this testimony and later moved for a mistrial. Defendant also objected to the prosecution's reference to him as "a black man." Defendant's objections were overruled on both counts.

After deliberating for three hours, the jury sent a message that it wanted to talk to the court. The jury was brought into the courtroom, where the foreman stated that they had reached an impasse at six to two, without indicating whether this was for acquittal or conviction. The trial judge, in the presence of defendant and both counsel, gave oral supplemental instructions to the effect that three hours was "not a very long time" to consider a case of this nature and that the jury should "reconvene and see if you can't solve your problems and reach a verdict."

Defendant sought to introduce post-trial evidence that two jurors had failed to disclose during voir dire that either they or a close relative had been victims of sex-related crimes. He alleged that the other jurors had used this nondisclosure as leverage to change the two jurors' votes from acquittal to conviction. The trial judge refused to hear or admit the evidence on the ground that it would be an intrusion on the deliberative process of the jury, in violation of rule 606(b) of the Utah Rules of Evidence. He did not grant a postconviction evidentiary hearing.

Defendant assigns error to the trial court on four grounds: (1) that the jury was improperly influenced by the prosecutor's reference to him as "a black man"; (2) that it was error to give the supplemental oral instruction to the jury; (3) that the trial court erred in admitting the police officer's testimony as to the victim's statements to her; and (4) that the failure of two jurors to correctly respond to a question during voir dire denied him a fair trial by an impartial jury.

## I.

The remark of the prosecutor to which defendant objected was made in closing argument. The prosecutor had summarized the evidence: the victim was recently married, was waiting for her wedding reception, had a vaginal infection, and had never met defendant. The prosecutor then reviewed the medical evidence and defendant's testimony that the victim drove into the rear of his car causing damages estimated by him at fifty dollars and that she consented to sexual intercourse in exchange for waiver of liability for the damages. Following this, the prosecutor remarked:

> Ask yourselves, does a woman in Mrs. [C.'s] condition voluntarily say to a black man she's never met the day before her wedding reception, "You bet. To save myself fifty dollars, I'll go down to your trailer, that I have never seen, and I have never seen you, and I don't know where I am going and don't know what I'll find there."

The reference to defendant's race was improper, but the question is whether it deprived defendant of a fair trial. We believe it did not.

In *State v. Tillman*, 750 P.2d 546, 555 (Utah 1987), we held that a prosecutor's actions and remarks constitute misconduct that merits reversal if (1) the actions or remarks call to the attention of the jurors matters they would not be justified in considering in determining their verdict and (2) under the circumstances of the particular case, the error is substantial and prejudicial such that there is a reasonable likelihood that in its absence there would have been a more favorable result for the defendant. See *State v. Gardner*, 101 Utah Adv.Rep. 3, 12, (January 31, 1989), to the same effect. In determining whether the error here was prejudicial, we note that the court had screened the jury during voir dire for possible racial prejudice. The fact that defendant was black was obvious to the jury,

and a single reference to defendant's color was unlikely to influence them. Second, the prosecutor's reference to defendant's color was made within an account of numerous circumstances which purported to make the consent of the victim less likely. We express no opinion on the soundness of the proposition that casual sexual encounters between people of different races are less likely than those between people of the same race. The prosecutor made his remark in an effort to imply such a proposition. There is no indication that the remark was made with derogatory intent or to suggest that because defendant was black, he was more likely to have committed the alleged crime. Third, the prosecutor's remark was an isolated incident and not part of "continued efforts" to bias the jury that were "too flagrant to be corrected." *State v. Troy*, 688 P.2d 483, 487 (Utah 1984). These three circumstances lead us to conclude that the remark did not prejudice the jury.

## II.

■ Defendant next assails the court's supplemental oral instruction to the jury, asserting that it violated his right to a fair trial. He argues that the judge should not have brought the jury back into the courtroom for further instructions, but instead should have sent into the jury room a written instruction to them to continue their deliberation. He also points out that the judge did not qualify his supplemental instruction by informing the jurors to make a decision based on their independent judgment and according to their own consciences. Thus, he argues, the supplemental instruction was coercive. We find no error. After giving the oral instruction, the court invited both counsel to add anything or to say anything. Neither counsel responded. Before the jury was excused to again begin its deliberation, the court informed the jurors that it would conference with both counsel and "if there are any additional comments or instructions that they wish me to submit to you, I'll either bring you back or we will send them in in writing." A conference was then held with counsel where defendant's counsel ex-

pressed his disapproval of the jury being brought back into the courtroom for further instruction. He stated that preferably a written note should have been sent to the jury telling it to continue deliberation. The judge agreed that he could have followed the latter procedure but expressed that he did not think any prejudice had resulted to defendant. He then again invited counsel to suggest anything further that he could give the jury by way of a written instruction or note. Defense counsel did not respond.

■ We do not agree that the supplemental instruction was coercive in any regard. It merely stated that they had not deliberated "a very long time," that the case warranted some additional consideration by them, and that they should reconvene and endeavor to reach a verdict. The instruction was not directed specifically toward the minority jurors, nor was there any suggestion that the jurors should surrender their individual views of conscience. Criticism which has been leveled at giving an *Allen* charge simply is not applicable here. *See Allen v. United States*, 164 U.S. 492, 501–02, 17 S.Ct. 154, 157, 41 L.Ed. 528, 530–31 (1896), *recently validated in Lowenfield v. Phelps*, 484 U.S. 231, ——, 108 S.Ct. 546, 551, 98 L.Ed.2d 568, 577 (1988). Nor do we find that there was any trial court violation of rule 19 of the Utah Rules of Criminal Procedure, requiring the court to furnish counsel with a copy of its proposed instructions. The rule was not meant to encompass an oral supplemental instruction of the type given here. This instruction did not instruct as to the law but merely directed and encouraged the jurors to continue deliberations for a further period of time in an effort to reach a verdict. Defense counsel was twice invited but declined to offer supplementation and was given the opportunity, which he took, to make an objection to the instruction so as to preserve its review on appeal.

## III.

Defendant next contends that the trial court erred in admitting the testimony of a

police officer concerning statements made to her by the victim during an interview conducted one to two hours after the rape. The trial judge allowed the testimony in evidence on two grounds: first, that the declarant's statements came under the "excited utterance" exception to the hearsay rule, Utah R.Evid. 803(2), or alternatively, that the testimony would prove a prior statement consistent with what the declarant testified to in court. Utah R.Evid. 801(d)(1)(B).

The "excited utterance" hearsay exception admits as evidence "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Utah R.Evid. 803(2). Defendant points out that all of our previous cases dealing with excited utterance exceptions in instances of sexual assault have been when children were the victims. *State v. Kaytso,* 684 P.2d 63 (Utah 1984); *State v. McMillan,* 588 P.2d 162 (Utah 1978). He urges that we do not extend the exception to adults when there has been a significant lapse of time between the alleged incident and the statement. However, the same rationale applies to consideration of the victim's age as to the lapse of time between an event and the statement. Although it is a factor to be considered, it is not solely determinative of whether the statement was an excited utterance, which determination rests in the sound discretion of the trial court. *State v. Fleming,* 27 Wash.App. 952, 956, 621 P.2d 779, 782 (1980). We have adopted the following test from *Johnston v. Ohls,* 76 Wash.2d 398, 406, 457 P.2d 194, 199 (1969):

> The crucial question in all cases is whether the statement was made while the declarant was still under the influence of the event to the extent that his statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment.

*Quoted favorably in State v. Kaytso,* 684 P.2d at 64; *State v. McMillan,* 588 P.2d at 163.

In the case before us, the record indicates that the victim had been dealt a blow to the head, had been taken to unfamiliar surroundings, and did not know where she was when she left the scene of the rape. She went home to her husband, who testified that she was uncommunicative and was only able to tell him that she had been raped. An ambulance took her to a hospital, where she made the statements in question to a police officer during an interview.

The officer testified to the complete narrative given to her by the victim in which she related where she had been prior to the incident, the events which led up to the assault, what took place during the assault, and the difficulty the victim had in finding her way home. The narration consumed an hour because the officer testified that the victim "didn't really want to talk about it" and that she was crying and upset.

■ Rule 803(2) is premised on the notion that the excitement caused by the event or condition temporarily stills the capacity for reflection, thus producing statements free of conscious fabrication. M. Graham, *Handbook of Federal Evidence,* § 803.2 (2d ed. 1986). In the instant case, not only were the statements made to the officer after a significant time delay, but the officer's testimony consisted of repetition of everything which the victim had told her during the one-hour interview. The testimony was not limited to a few statements which might be viewed as being spontaneous or excited utterances. While it is true that the victim was still under the stress and shock of the assault, we believe that we would be pushing the limits of the rule to hold admissible the entire contents of this one-hour interview as an "excited utterance."

■ The State further contends that the officer's testimony was properly admitted under rule 801(d)(1)(B), which allows in evidence a prior consistent statement of a declarant whose testimony at a trial or hearing is attacked by an express or implied charge "of recent fabrication or improper influence or motive." A short answer to that contention is that the officer's testimony was not limited to simply rebutting such charges. We held this lack of

limitation to be improper in *State v. Sibert*, 6 Utah 2d 198, 310 P.2d 388 (1957).

We conclude that the trial court erred in allowing the officer to testify to the full content of the interview. In view of the fact, however, that the officer's testimony was merely cumulative to that already testified to by the victim, the error was harmless under the standard set out in *State v. Tillman*, 750 P.2d at 555, which we have referred to above. Nothing new or additional was said in the interview which the victim had not already testified to at trial.

## IV.

During the impaneling of the jury, the trial court asked the prospective jurors, "[H]ave any of you or a close relative been the victim of a crime of violence? If so, please raise your hands." In response, one woman stated that she had been the victim of a sexual assault. After questioning her, the trial court excused her for cause.

After his conviction, defendant moved for a new trial based on his discovery that two jurors who were seated had been involved in sex-related crimes but had failed to so indicate during voir dire examination. Juror Wall had once reported to police that her child was sexually abused, but no trial or conviction resulted. Juror Salaz had been the victim of sexual assault. In support of his motion for a new trial, defendant attempted to introduce affidavits of Wall and Salaz as well as their testimony regarding discussions that took place among the jurors during jury deliberation. The testimony was intended to show that all jurors except Salaz and Wall voted in favor of a guilty verdict and that this impasse lasted a few hours. The two jurors would also testify that the other jurors used the fact that Salaz and Wall had failed to disclose their past experiences during voir dire as leverage to change their votes, thus convicting defendant. The trial court refused to admit either the affidavits or the testimony of Salaz and Wall on the ground that the admission would constitute an impermissible intrusion upon the deliberative process of the jury in violation of rule 606(b), Utah Rules of Evidence. Defendant now contends that the nondisclosure of the two jurors deprived him of an opportunity to exercise a challenge for cause or a peremptory challenge, resulting in a denial of his right to an impartial jury.

Rule 606(b) of the Utah Rules of Evidence states:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

While this Court has not ruled on whether rule 606(b) would prohibit the admission of the affidavit and testimony of the two jurors in the instant case, several federal circuit courts of appeals have held that the rule does not bar evidence which tends to show deceit during voir dire. *Hard v. Burlington Northern R.R.*, 812 F.2d 482 (9th Cir.1987) (juror did not disclose on voir dire that he was a former employee of defendant railroad); *Maldonado v. Missouri Pacific Ry.*, 798 F.2d 764 (5th Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 762 (1987) (no concealment by juror during voir dire found). Moreover, untruthful answers to questions posed on voir dire occur before the jury's deliberation and not during deliberation as covered by rule 606(b). Boyce & Kimball, *Utah Rules of Evidence 1983—Part II*, 3 Utah L.Rev. 467, 483 (1987) (citing Mueller, *Jurors' Impeachment of Verdicts and Indictments in Federal Court Under Rule 606(b)*, 57 Neb.L.Rev. 920, 957–58 (1978)). We there-

fore conclude that the trial court applied rule 606(b) too broadly and erroneously failed to consider the allegation of juror misconduct which is charged here.

 Defendant relies heavily upon *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), as outlining the procedure which should be followed when a juror has failed to honestly answer questions posed on voir dire. In that case, which was a products liability action, it was alleged that a juror had failed to disclose information about injuries previously sustained by his son when a tire exploded. The United States Supreme Court ruled that in order for a moving party to obtain a new trial under the circumstances, he must demonstrate (1) that the juror failed to answer honestly a material question on voir dire, and (2) that a correct response would have provided a valid basis for a challenge for cause. *McDonough,* 464 U.S. at 556, 104 S.Ct. at 850, 78 L.Ed.2d at 671. Defendant contends that he has met the first prong, but the State responds that the question posed to the prospective jurors here was ambiguous in that the trial court did not explain what was meant by "a crime of violence." The State argues that it is entirely conceivable that jurors Wall and Salaz honestly did not consider sexual abuse and sexual assault to be crimes of violence.

We cannot here speculate and resolve these factual matters. The case must be remanded to the trial court to hold a hearing and to make a factual determination as to whether the two-pronged test of *McDonough* has been met by defendant. If the trial court determines that both prongs of the test have been met, a new trial is ordered; if not, the conviction must be and is affirmed.

HALL, C.J., and STEWART and DURHAM, JJ., concur.

ZIMMERMAN, Justice (concurring):

I agree that the closing argument of the prosecutor does not constitute harmful error under *State v. Troy,* 688 P.2d 483, 486 (Utah 1984). I also agree that the supplemental oral instruction given the jury did not violate Thomas's right to a fair trial under either the state or federal constitutions. However, I would note that the decision in *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), cited by the majority, certainly does not answer the question of whether the giving of an *Allen* charge is proper under the Utah Constitution or should be permitted as a matter of judicial administration.

I also join the Court in remanding the matter for a hearing on whether the two-pronged test of *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), is met. As the majority notes, the State argues that because both of the jurors in question had originally voted to acquit, Thomas could not possibly have been prejudiced by their misstatements during voir dire and his inability to strike them from the venire. This is unpersuasive for two reasons. First, as is clear from the majority's statement of the *McDonough* rule, the actions of those jurors subsequent to voir dire is irrelevant to a determination of whether Thomas is entitled to a new trial; the sole question is whether a correct response would have provided a valid basis for a challenge. Second, even if their post-voir dire behavior was relevant to the new trial question, Thomas's contentions, if true, would support a finding of prejudice. He claims that those jurors would have held out for acquittal had not the other jurors been able to coerce them into voting for a conviction because they knew of the false voir dire statements.

Finally, I agree that the trial court committed harmless error in admitting the out-of-court statements of the victim under rule 803(2). Utah R.Evid. 803(2). However, I cannot agree with the implication in the majority opinion's discussion of the admission of the out-of-court statements under rule 801(d)(1)(B) that attack on the witness's testimony amounted to a claim that that testimony was the product of "recent fabrications or improper influences as motives" so as to justify admitting her prior hearsay statements. Utah R.Evid. 801(d)(1)(B). The most that can legitimately be said is that the witness's trial testimo-

ny was inconsistent in some minor particulars with what had been said out-of-court. Mere inconsistency certainly is not grounds for letting in prior hearsay statements. Therefore, in my view there is no basis on the facts of this case for suggesting that the testimony offered would be properly admissible on any of the grounds set forth in subparts (A), (B), or (C) of 801(d)(1). *See State v. Speer*, 718 P.2d 383, 385 (Utah 1986) (upholding the admission of out-of-court statements under rule 801(d)(1)(B) where there had been a direct attempt to impeach testimony as being recently fabricated).