**STATE of Utah, Plaintiff and Appellee,**

v.

**Jon T. WETZEL, Defendant and Appellant.**

No. 920466.

Supreme Court of Utah.

Dec. 30, 1993.

Rehearing Denied Jan. 25, 1994.

---

R. Paul Van Dam, Atty. Gen. and Charlene Barlow, Asst. Atty. Gen., Salt Lake City, for the State.

Martin V. Gravis, Ogden, for Jon T. Wetzel.

STEWART, Justice:

Jon T. Wetzel appeals from his conviction of first degree murder, a capital offense, for which he was sentenced to life in prison. We affirm.

The victim, Sharol Wetzel, and defendant were married December 17, 1976. They separated in 1985, and on November 5, 1985, Mrs. Wetzel contacted a lawyer to initiate divorce proceedings. Divorce papers were served on defendant on November 13, 1985. In her divorce complaint, Mrs. Wetzel sought, inter alia, an order restraining defendant from disposing of marital assets and pledging his retirement funds. At defendant's murder trial, Mrs. Wetzel's attorney testified that Mrs. Wetzel told him in a telephone conversation that "she was scared, that Jon was going to kill her because of—apparently papers had been served on him, he knew what she was requesting." Two days after this conversation with her attorney, Mrs. Wetzel was killed by a shot to the head.

Kitty Eakes met defendant and Mrs. Wetzel during a drug transaction. Subsequently, she and defendant began a sexual relationship. Through October and November of 1985, defendant began calling Eakes every day to ask her to kill his wife. During this time, defendant supplied Eakes with marijuana and hallucinogenic mushrooms. He also gave Eakes money to "think about" killing Mrs. Wetzel and later gave her more money to purchase a gun.

Eakes obtained a .22 caliber gun and tried to give it to defendant on November 19, 1985. The same day, defendant took Eakes to his house, where she spent that night and the next day. On November 20, 1985, defendant told Eakes that this was the day to kill his wife. He then explained how to carry out the murder and the story they would tell police if they were questioned.

That day, Eakes shot and killed Mrs. Wetzel. Eakes later confessed to the shooting but refused to implicate defendant. She pleaded guilty to the murder and was sentenced to prison in January of 1986. While in prison, Eakes began therapy and decided to tell about defendant's involvement in the murder. She subsequently gave a statement implicating Wetzel to an attorney she had met through Alcoholics Anonymous.

Defendant was convicted by a jury of first degree murder and sentenced to life in prison. Defendant appeals his conviction, arguing that the trial court erred by (1) failing to excuse four jurors for cause, (2) allowing certain testimony, and (3) denying defendant's motion for a mistrial when one juror and an alternate juror saw him in handcuffs one morning before trial began.

## I. CHALLENGES FOR CAUSE

Defendant argues that his conviction must be overturned because the trial court did not grant his challenges for cause against four prospective jurors.

It is prejudicial error to compel a defendant to expend one of his peremptory challenges to remove a prospective juror who should have been removed for cause. *State v. Bishop,* 753 P.2d 439, 451 (Utah 1988); *State v. Gotschall,* 782 P.2d 459, 461 (Utah 1989); *State v. Cobb,* 774 P.2d 1123, 1125 (Utah 1989); *State v. Moton,* 749 P.2d 639, 642 (Utah 1988). This rule presupposes that

the defendant used all his peremptory challenges; otherwise, the defendant will have suffered no prejudice. *State v. Chealey,* 116 P.2d 377, 379 (Utah 1941); *see Bishop,* 753 P.2d at 451.

█ The record in this case does not indicate how either party used its peremptory challenges. Thus, we have no way of knowing whether defendant exercised all his peremptory challenges or whether he used any of them to remove the jurors he now challenges. In the absence of an adequate record on appeal, this Court can only assume the regularity of the proceedings below. *Jolivet v. Cook,* 784 P.2d 1148, 1150 (Utah 1989), *cert. denied,* 493 U.S. 1033, 110 S.Ct. 751, 107 L.Ed.2d 767 (1990); *State v. Miller,* 718 P.2d 403, 405 (Utah 1986). Parties claiming error below and seeking appellate review have the duty and responsibility to support their allegations with an adequate record. " '*Absent that record defendant's assignment of error stands as a unilateral allegation which the review court has no power to determine.* This Court simply cannot rule on a question which depends for its existence upon alleged facts unsupported by the record.' " *State v. Barella,* 714 P.2d 287, 288 (Utah 1986) (emphasis in original) (quoting *State v. Wulffenstein,* 657 P.2d 289, 293 (Utah 1982), *cert. denied,* 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 799 (1983)). Because defendant has failed to demonstrate that he was compelled to use any of his peremptory challenges and that he used all of them, we affirm the trial court's denial of his challenges for cause.

## II. ADMISSION OF TESTIMONY

█ Defendant asserts that the trial court erroneously admitted testimony concerning the life history of Kitty Eakes. Eakes testified to a past of physical and sexual abuse, both as a child and as an adult. Her mother abandoned her when she was a child, and despite hating her mother for this, she moved to Utah to be with her. After living a short time with her mother and stepsister, Eakes was thrown out of the house. Eakes hitchhiked to Ogden and lived on the streets.

Defendant argues that this evidence is irrelevant and was presented only to establish sympathy for Eakes, the actual killer, and to lay a foundation for the testimony of Dr. Harvey Wheelwright, a psychiatrist who testified that Eakes was susceptible to manipulation because of her prior abusive relationships.

█ Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Utah R.Evid. 401. Deciding whether evidence is relevant ordinarily requires a balancing of factors, and we will reverse a determination of relevancy only if the trial court abused its discretion. *Bambrough v. Bethers,* 552 P.2d 1286, 1290 (Utah 1976).

Defendant was charged under Utah Code· Ann. § 76–2–202 (1990), Utah's complicity statute. That provision states:

> Every person, acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct.

Eakes' testimony was intended to establish the elements of accomplice liability. Evidence at trial revealed that defendant repeatedly asked Eakes to kill his wife and gave her money to "think about it." Moreover, defendant knew that Eakes hated her mother, and he used this knowledge to his advantage, saying, "[W]hy don't you just [act] like she's your mother, you know, act like she's your mother." On the basis of that evidence, a jury could find it likely that Eakes could be manipulated by defendant if she had suffered long-term abuse. Evidence of Eakes' history helped explain her motivation to kill the victim, her initial refusal to implicate defendant, and most important, defendant's role in encouraging Eakes to commit the crime. The evidence, therefore, was highly probative on the issue of whether defendant influenced Eakes to murder his wife.

Defendant argues that since the State presented no evidence that he personally physically or sexually abused Eakes or that he

knew of her prior life, evidence of Eakes' prior abuse was irrelevant. To support this argument, defendant points to our decision in *State v. Schreuder*, 726 P.2d 1215, 1222 (Utah 1986), where evidence that the defendant abused the witness was admitted to lay a foundation for expert testimony that the defendant manipulated the witness. However, that case does not stand for the proposition that evidence of an accomplice's susceptibility to manipulation is not relevant unless the defendant actually inflicted the abuse. Accordingly, the trial court did not abuse its discretion in ruling that the testimony was relevant.

■ Defendant next asserts that the testimony of Dr. Harvey Wheelwright constituted improper evidence of Eakes' character for truth and honesty in violation of Rule 608(a) of the Utah Rules of Evidence.[1] *See State v. Rimmasch*, 775 P.2d 388 (Utah 1988). Defendant also challenges the relevance of the evidence.

Dr. Wheelwright testified that he interviewed Eakes three times and learned about her past history. He stated that in his opinion, her upbringing and history of abuse would make her more vulnerable "to act in accordance with the desires of an individual man that she might be involved with." Dr. Wheelwright also testified that Eakes would become enraged at a person who was cast in the role of her mother.

■ In *Rimmasch*, this Court held that an expert may not give a direct opinion of a witness's truthfulness. 775 P.2d at 392. Nevertheless, a psychologist, a psychiatrist, or a similar expert may render an opinion of a diagnostic or evaluative nature (other than as to veracity) based on statements made during an interview if the opinion "does not cross the line from being a statement of the basis of an expert opinion ... to being a comment on truthfulness on a particular occasion." *Id.* at 393. Dr. Wheelwright's opinion did not directly or indirectly comment on

Eakes' veracity; rather, it only tended to establish a psychological basis for the conclusion that Eakes was especially vulnerable to the influence of another. Unlike the expert testimony in *Rimmasch*, Dr. Wheelwright's testimony did not cross the line and comment on the witness's truthfulness with respect to specific acts at issue in the case. The trial court did not err in admitting the evidence.

■ Defendant next argues that the trial court committed reversible error by allowing the victim's attorney to testify that the victim told him she was afraid defendant would kill her. The trial court permitted the testimony under the state-of-mind exception to the hearsay rule. Utah R.Evid. 803(3).

Clearly, the victim's statements denote her state of mind and fall into the ambit of the state-of-mind exception. The question, however, is whether the statements were relevant and if their probative value substantially outweighed any prejudicial effect that they might have had. *State v. Auble*, 754 P.2d 935, 937 (Utah 1988); *State v. Wauneka*, 560 P.2d 1377, 1379 (Utah 1977); *see also* Utah R.Evid. 403.

We explained the strict admissibility standards for this type of evidence in *Auble*:

*Wauneka* held that such hearsay evidence is generally inadmissible, but may be admitted under the state-of-mind exception to the hearsay rule if it is not used to prove the truth of the matter asserted and if certain other criteria are met, specifically: (i) the evidence is probative of the decedent's state of mind at the time of the killing, and (ii) the decedent's state of mind has already been placed in issue by defense evidence or argument that the killing was (a) a suicide, (b) in self-defense, or (c) an accident to which the decedent contributed by acting as an aggressor. *Wauneka* also suggested that the evidence might be

1. Rule 608(a) provides:
    *Opinion and reputation evidence of character.* The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for

truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

admissible if the identity of the killer is at issue.

(754 P.2d at 937 citations and footnote omitted.)

The defense in this case did not place the victim's state of mind in issue by arguing that her death resulted from suicide, self-defense, or accident. The State argues that the evidence is admissible because there "was still a question of whether defendant was the impetus behind the murder, i.e., a perpetrator.... [T]he statements from the victim were relevant to the identity of the non-shooting party, who was the mastermind behind the murder."

The real question here is not the identity of the accomplice, but the existence of an accomplice. The jury could have believed Eakes' initial version of events in which she refused to implicate defendant and acted alone, or it could have believed Eakes' second version in which she acted at the behest of defendant.

██ *Wauneka* and *Auble* were concerned with the great potential for unfair prejudice created by this type of evidence. The inherent danger of this kind of evidence is that the jury is likely to use it as evidence of a defendant's intentions, acts, or culpability rather than the victim's state of mind. *Auble,* 754 P.2d at 937.

██ To alleviate some of the concerns with this type of evidence, limiting instructions are a *per se* requirement.[2] *Id.* Nevertheless, as we noted in *Auble,* curative instructions are not always sufficient to avoid the potential prejudice to the defendant. *Id.* The potential for prejudice is greatest when the circumstantial facts are closely related to the issue the jury must ultimately decide. When, as here, the improper purpose for which the jury might consider the evidence bears closely on the central question—defendant's guilt or innocence—the utility of a curative instruction becomes doubtful. Because the victim's state of mind was not

directly in issue and the utility of the curative instruction is at best doubtful, we hold that the evidence was improperly admitted under Rule 803(3) of the Utah Rules of Evidence.

██ The State alternatively contends that the evidence was admissible under the excited-utterance exception to the hearsay rule. Utah R.Evid. 803(2). The trial court refused to admit the testimony on that ground.

██ The pivotal issue for an excited utterance is reliability. Although the length of time between the startling event and the statement is not solely determinative, *State v. Thomas,* 777 P.2d 445, 449 (Utah 1989), a prerequisite to the excited-utterance exception is that the declarant must be under the stress or excitement of the event at the time of the statement. *State v. Cude,* 784 P.2d 1197, 1200 (Utah 1989). This safeguard to some extent protects against conscious fabrication that may be spawned with time to reflect. *See Thomas,* 777 P.2d at 449. No evidence in this record establishes when the exciting or startling event occurred, making it impossible to evaluate whether the victim's statement was in fact an excited utterance. The trial court, therefore, did not err in its ruling.

██ Although the evidence was improperly admitted, a reversal is not warranted absent a showing of prejudice. *State v. Hamilton,* 827 P.2d 232, 240 (Utah 1992). A review of the record indicates that there was ample evidence to convict defendant even without this testimony. The jury heard evidence that defendant made death threats against his wife, and Eakes testified to defendant's substantial involvement in the murder. Because defendant cannot show a "reasonable likelihood that the error affected the outcome of the proceedings," *Hamilton,* 827 P.2d at 240, we hold that the error was harmless. *See also State v. Thomas,* 777 P.2d 445 (Utah 1989) (harmless error when

---

2. The trial court gave the following limiting instruction to the jury:

Members of the jury, in a few minutes you are going to hear statements of the deceased, Sharol Wetzel, which will be allowed as evidence in this trial. You are instructed that this testimony is to be considered by you only in connection with evaluating the state of mind of Sharol Wetzel. And [its] effect if any on her subsequent conduct. You are not to consider the testimony to evaluate the state of mind or conduct of the defendant, Jon Wetzel.

erroneously admitted evidence was cumulative of other testimony).

## III. MISTRIAL

■ Defendant argues that the trial court erred in not granting a mistrial when, one morning prior to trial, a juror and an alternate juror saw him in handcuffs. At the time, guards were transporting defendant from jail to the courtroom for the day's proceedings. The handcuffs were removed prior to the beginning of trial, and at no time during the trial was defendant forced to wear handcuffs or shackles.

Defendant has not shown that he suffered any prejudice as a result of the encounter or that the verdict was in any way tainted by the effect of seeing him in handcuffs. " '[A] brief and fortuitous encounter of the defendant in handcuffs is not prejudicial and requires an affirmative showing of prejudice by the defendant.' " *Allen v. Montgomery,* 728 F.2d 1409, 1414 (11th Cir.1984) (quoting *Wright v. Texas,* 533 F.2d 185, 187 (5th Cir. 1976)); *see State v. Young,* 853 P.2d 327, 351 (Utah 1993). The jury's inadvertent observation of the defendant *outside* the courtroom, prior to trial, did not "dilute [the] presumption of innocence" so as to require a reversal absent evidence of actual prejudice. *United States v. Williams,* 809 F.2d 75, 83 (1st Cir. 1986), *cert. denied,* 481 U.S. 1030, 107 S.Ct. 1959, 95 L.Ed.2d 531 (1987); *United States v. Shaver,* 511 F.2d 933, 935 (4th Cir.1975).

■ Finally, defendant claims that the trial court erred in not granting his motion for a mistrial when a prosecution witness volunteered information that he had purchased marijuana from defendant. Although the trial court refused to grant a mistrial, it gave the jury a curative instruction and struck the testimony.[3] Rule 30(a) of the Utah Rules of Criminal Procedure states that "[a]ny error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded." The testimony, while certainly not beneficial to defendant, was not so prejudicial as to impair a

substantial right. The trial court obviated any error when it struck the testimony and ordered the jury to disregard it. Thus, the trial court did not abuse its discretion in refusing to grant defendant's motion for a new trial.

Affirmed.

HALL, C.J., HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.

---

3. The trial court stated, "Members of the jury, I will instruct you that Mr. Wheeler's last response to [the prosecutor's] question was unresponsive. And I am therefore striking it. And you are not to—you are to disregard his response."