**2017 UT App 111**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
PAULA TUITAVUKI FAHINA,
Appellant.

Opinion
No. 20151000-CA
Filed July 7, 2017

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 141912435

Nathalie S. Skibine and Ralph W. Dellapiana,
Attorneys for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and MICHELE M. CHRISTIANSEN concurred.

POHLMAN, Judge:

¶1      Defendant Paula Tuitavuki Fahina appeals his conviction for aggravated assault involving domestic violence, a third degree felony. Fahina argues that the trial court erred in admitting testimony at trial under the excited utterance exception to the hearsay rule. We affirm.


BACKGROUND

¶2      Fahina and Victim met while she was residing at an extended stay hotel in South Salt Lake City. They began a sexual relationship that lasted for about a month and a half, during

which time Fahina would stay overnight in Victim's room three or four nights a week. Fahina also kept some of his belongings in Victim's room.

¶3      Early one morning, after Victim and Fahina had consensual sex, there was an incident in Victim's room. Following an investigation into that incident, the State charged Fahina with aggravated sexual assault, forcible sodomy, aggravated kidnapping, and aggravated assault involving domestic violence. Fahina pleaded not guilty.

¶4      Victim testified at trial that after she had consensual sex with Fahina, they began to argue. She explained that the argument turned violent and Fahina pulled out a twelve-inch-long serrated knife. She said that Fahina twice demanded that she "get on the bed" while he alternated between holding the knife above his head and pointing it at her.

¶5      According to Victim, she "got really scared" and complied with Fahina's demand. She said that Fahina told her to get under the covers, but she refused because she was "scared he would start stabbing" her. Fahina told Victim, "If you scream, I'll kill you."

¶6      Victim then testified that, with the knife still in hand, Fahina demanded that she perform oral sex on him. Victim initially told Fahina no, but because she was "scared for [her] life," she did "whatever he wanted [her] to do," and Fahina "just kept pointing the knife" at her and "would stab it at" her when she tried to stop.

¶7      Victim said that she eventually "got the nerve up" to try to escape. She ran to and unlocked the door while screaming, "He's going to kill me." But before Victim could open the door, Fahina, still holding the knife, grabbed Victim and threw her back into the room against the bed's box spring, which broke two of her ribs and punctured her lung. Terrified, Victim got up

and again ran to the door. Having previously unlocked it, she was now able to open it. A woman standing outside grabbed Victim's arm and took Victim, who was not dressed, to another room to get some clothes.

¶8    Two other residents staying down the hall from Victim testified that on the morning in question, they heard Victim scream, "He's going to kill me." After hearing the scream, one resident went into the hallway to investigate while the other called 911. The resident in the hallway saw Victim run out of her room naked and again heard her yell, "[H]e [is] going to kill me, help me, come help me." He then watched as Victim ducked into another room, after which he saw Fahina run out of Victim's room holding a ten-to-fourteen-inch serrated knife. Fahina ran past the resident to a stairwell marked "Exit."

¶9    Upon receiving a call that a naked woman was screaming for help at the hotel, a South Salt Lake City police officer (Officer) responded. Officer testified that he first went to Victim's room but ultimately found her sitting on the curb in front of the hotel's main office "very distraught," "crying," and injured. He testified that her hands were shaking and "wouldn't stay still," and that "she seemed like she had just been in some sort of difficult situation."

¶10   After speaking to Victim, Officer escorted her to her room to continue the interview and the investigation. He said that he found her room in disarray, looking "very, very cluttered as if some altercation had occurred." The bedding was off the bed, a bicycle was on its side in the middle of the room, and nail polish was spilled on the carpet. Officer also found a knife sheath on the bed.

¶11   When the prosecutor asked Officer what Victim had told him when they first spoke, defense counsel objected on hearsay grounds, arguing that the question sought to elicit testimonial evidence in violation of the Sixth Amendment and *Crawford v.*

*Washington*, 541 U.S. 36 (2004). The prosecutor responded that Officer's testimony was admissible under the excited utterance exception to the rule against hearsay as set forth in Utah Rule of Evidence 803(2). The prosecutor argued that the exception applied because Victim was still under the stress of the event when she spoke with Officer, and she was "still shaking," "still upset," and "still crying."

¶12 Defense counsel responded that *Crawford* applied, and the court interjected that the prosecutor had not yet explained the purpose for which she was offering the statement. Defense counsel stated, "She's offering it as an excited utterance. I guess I'm going to—I'm not withdrawing my objection, but I'm going to submit without further argument." The trial court overruled counsel's hearsay objection, agreeing with the prosecutor that based on Officer's testimony that Victim "was shaking, crying, and so forth," the excited utterance exception applied.

¶13 Thereafter, Officer testified that Victim had told him that she had engaged in consensual sex with Fahina, and that Fahina "wasn't pleased with it and he demanded oral sex." Officer further testified that Victim told him she "kept saying no and then [Fahina] pulled out a knife" and demanded oral sex. Victim told Officer that she "tried to get away, but she couldn't, and [Fahina] grabbed her and threw her back down in . . . the hotel room."

¶14 Fahina also testified at trial. He stated that the night before the assault, he stayed in Victim's room and they had sex. He said that in the morning, Victim told him that she had fallen in love with him. Fahina told her that she "shouldn't have done that," and now he had to "cut ties" with her. Victim responded by begging Fahina to stay a little longer and "one thing led to another" and she performed consensual oral sex on him.

¶15 Fahina then testified that "out of the blue," Victim said she needed to get a drink. Instead, however, Victim opened the

hotel room door and yelled, "He is go[ing] to stab me." According to Fahina, he thought Victim was in danger, so he went to the door to investigate. He pushed her aside while "[s]he kept screaming and screaming and screaming," only to find that no one was at the door. Fahina testified that he "was mad" and his "heart started pounding," so he dressed and left the room. He further testified that Victim also left the room with no clothing on the lower half of her body, walking in the opposite direction. Fahina denied having a knife, threatening Victim, or forcing Victim to perform oral sex.

¶16   In closing argument, defense counsel asserted that Victim had been angry with Fahina and that she "exaggerat[ed] what happened." Defense counsel also strongly urged the jury to acquit Fahina on the kidnapping and sexual assault charges, but told the jury that Victim "was injured, she was pushed, some kind of assault," and that "maybe under these facts you would find that . . . there is evidence . . . for [the assault] charge."

¶17   The jury convicted Fahina of aggravated assault involving domestic violence but acquitted him of aggravated sexual assault, forcible sodomy, and aggravated kidnapping. Fahina appeals.

ANALYSIS

¶18   The sole issue on appeal is whether the trial court committed reversible error in admitting Victim's out-of-court statements to Officer under the excited utterance exception to the rule against hearsay as set forth in Utah Rule of Evidence 803(2).

I. Preservation

¶19   Before addressing the merits, we consider the State's claim that the issue is unpreserved. Ordinarily, to preserve an evidentiary issue for appeal, a defendant must enter an objection

on the record that is both timely and specific. *State v. Pinder*, 2005 UT 15, ¶ 45, 114 P.3d 551; *see also* Utah R. Evid. 103(a)(1) (requiring a timely and specific objection to the admission of evidence to preserve a claim of error). This requirement ensures that the trial court has "an opportunity to address a claimed error and, if appropriate, correct it," *see Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366 (citation and internal quotation marks omitted), and it "prevents a party from avoiding [an] issue at trial for strategic reasons only to raise the issue on appeal if the strategy fails," *Wohnoutka v. Kelley*, 2014 UT App 154, ¶ 3, 330 P.3d 762 (alteration in original) (citation and internal quotation marks omitted).

¶20　The State concedes that Fahina objected on hearsay grounds to the admission of Officer's testimony regarding Victim's out-of-court statements. But the State argues that Fahina's claim on appeal is unpreserved because he "only argued that the testimony was inadmissible hearsay under *Crawford v. Washington*, 541 U.S. 36 (2004)," and he "never argued below the claims that he now brings on appeal, i.e., that the testimony was not admissible under the excited utterance exception."

¶21　The State is correct that Fahina's argument against the application of the excited utterance exception is more robust on appeal than it was during trial. But as the Utah Supreme Court clarified in *Gressman v. State*, 2013 UT 63, 323 P.3d 998, "[i]*ssues* must be preserved, not arguments for or against a particular ruling on an issue raised below." *Id.* ¶ 45. "An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on [it]." *Id.* (alteration in original) (citation and internal quotation marks omitted).

¶22　Here, the trial court had an opportunity to rule on the issue of whether the excited utterance exception applied.

Defense counsel timely and specifically objected to the prosecutor's solicitation of hearsay testimony from Officer, and the prosecutor argued for admission of the testimony based on the excited utterance exception to the hearsay rule. The trial court then overruled the objection based on the evidence presented, and concluded that the excited utterance exception applied.

¶23  Although Fahina did not previously articulate every argument he now advances on appeal, he objected to the admission of Officer's testimony as hearsay and the trial court ruled on the issue before us—whether the excited utterance exception applies. Under these circumstances, we readily conclude that the issue was preserved. *See Fort Pierce Indus. Park Phases II, III & IV Owners Ass'n v. Shakespeare*, 2016 UT 28, ¶ 13, 379 P.3d 1218 (determining that "the district court's decision to take up [a] question conclusively overcame any objection that the issue was not preserved for appeal"); *see also Arbogast Family Trust ex rel. Arbogast v. River Crossings, LLC*, 2008 UT App 277, ¶ 11, 191 P.3d 39 (concluding that an issue was preserved despite inadequate argument because the trial court ruled on the specific question), *aff'd sub nom. Arbogast Family Trust v. River Crossings, LLC*, 2010 UT 40, 238 P.3d 1035.

## II. The Excited Utterance Exception

¶24  Having determined that the issue raised on appeal was preserved, we turn our attention to its merits. Out-of-court statements offered to prove the truth of the matter asserted are inadmissible unless they fit within an exception to the rule against hearsay. Utah R. Evid. 801(c), 802, 803, 804. "Exceptions to the hearsay rule are based on factors that provide assurances of testimonial reliability sufficient to dispense with the usual means of purging testimony of error and falsehood, i.e., the oath, cross-examination, and the trier of fact's assessment of the

declarant's veracity." *State v. Smith*, 909 P.2d 236, 239 (Utah 1995).

¶25 The "excited utterance" is one such exception. Utah R. Evid. 803(2); *Smith*, 909 P.2d at 239. To qualify as an excited utterance, the out-of-court statement must be "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Utah R. Evid. 803(2). "The generally accepted rationale for the exception is that declarations made during a state of excitement temporarily still a declarant's capacity to reflect and thereby produce utterances free of conscious fabrication." *Smith*, 909 P.2d at 239–40.

¶26 Fahina contends that the trial court erred in admitting under the excited utterance exception Officer's testimony reciting Victim's account of the assault. Fahina argues that Victim's statements were not "spontaneous," but a "deliberate narrative provided to an investigating officer" that does not fit within the "narrow" excited utterance exception. Fahina also contends that the error was prejudicial because the statements "bolstered [Victim's] disputed testimony." Fahina argues that the jury's verdict "reflects serious doubts" in Victim's account of the assault and that Officer's supporting testimony "could have tipped the scales in favor of conviction."

¶27 In this instance, we need not determine whether the trial court erred in admitting Officer's testimony relating Victim's account of the assault. Assuming without deciding that the court erred in admitting Officer's testimony under the excited utterance exception, Fahina has not shown that the admission was harmful.

¶28 An evidentiary error "cannot result in reversible error unless the error is harmful." *State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992); *see also* Utah R. Evid. 103(a) ("A party may claim error in a ruling to admit or exclude evidence only if the error

affects a substantial right of the party . . . .”). Harmfulness requires “more than the mere possibility that the outcome might have been different without the error.” *State v. Powell*, 2007 UT 9, ¶ 21, 154 P.3d 788. Instead, the appellant must show that, “absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined.” *Id.* (citation and internal quotation marks omitted).

¶29 When determining whether an alleged error was harmful, we consider such factors as the importance of the relevant testimony, whether the testimony was cumulative, and the overall strength of the prosecution’s case. *Hamilton*, 827 P.2d at 240; *State v. Hackford*, 737 P.2d 200, 205 (Utah 1987). “The more evidence supporting the verdict, the less likely there was harmful error.” *Hamilton*, 827 P.2d at 240.

¶30 Here, Officer’s testimony relating what Victim told him on the morning of the assault had minimal significance. Officer was one of five witnesses to testify during the day-long trial and his testimony regarding Victim’s out-of-court statements was brief, comprising six sentences and less than nine lines of more than one hundred pages of testimony. In addition, the disputed testimony was never repeated or emphasized. Even when the prosecutor discussed during closing argument the evidence that corroborated Victim’s testimony, Officer’s hearsay testimony was not mentioned.

¶31 The significance of the testimony reciting Victim’s out-of-court statements was further minimized because it was cumulative of Victim’s testimony regarding the assault. In *State v. Thomas*, 777 P.2d 445 (Utah 1989), the Utah Supreme Court held that the trial court committed harmless error in admitting testimony regarding the out-of-court statements of the victim under the excited utterance exception. *Id.* at 449–50. The court determined that the error was harmless because “the officer’s

testimony [reciting the victim's out-of-courts statements] was merely cumulative to that already testified to by the victim." *Id.* at 450. "Nothing new or additional was said in the interview which the victim had not already testified to at trial." *Id.*

¶32    Similarly, in this case, Officer added nothing new to Victim's testimony of the assault in her hotel room. Victim testified that Fahina demanded oral sex from her while threatening her with a knife; that she told him no; that she tried unsuccessfully to escape; and that Fahina grabbed her and threw her down. Officer's more limited testimony repeating what Victim told him did not enhance or enlarge the narrative.

¶33    Fahina argues that this case is distinguishable from *Thomas* because the jury here was forced to make a "credibility determination" as between Victim and Fahina due to their significantly different accounts of the events in question. Fahina argues that the jury's acquittal on the charges for aggravated sexual assault, forcible sodomy, and aggravated kidnapping demonstrates that the jury harbored "serious doubts in [Victim's] account" and that Officer's testimony repeating her account "could have tipped the scales in favor of conviction."

¶34    On the contrary, the most reasonable inference from the split verdict is that the jurors were not convinced by Officer's testimony. Though brief, the challenged portion of his testimony equally supported the aggravated sexual assault, forcible sodomy, and aggravated kidnapping charges rejected by the jury. Officer testified that Victim stated that Fahina threatened her with a knife, demanded that she perform oral sex, and stopped her from leaving the room when she tried to escape. Had the jury found this testimony compelling, it likely would have found Fahina guilty of the additional charges. The fact that the jury found Fahina guilty of only one of the four charges that Officer's hearsay testimony supported suggests the jury did not find it convincing.

¶35　In fact, what likely "tipped the scales" in favor of guilt on the aggravated assault charge was corroborating circumstantial evidence.[1] Unlike the other charged offenses, Victim's testimony regarding the aggravated assault was corroborated by medical records and photographs documenting Victim's physical injuries that she testified were incurred when Fahina pushed her down; photographs of the knife sheath on the bed in Victim's hotel room; photographs of Victim's room in disarray; Officer's testimony that when he found Victim on the morning of the attack, "she seemed like she had just been in some sort of difficult situation"; the testimony of the neighboring residents who heard Victim's screams that her life was being threatened; and the testimony of one of those residents that he saw Fahina run out of Victim's room with the same type of knife Victim described. Even defense counsel recognized the strength of the State's case against Fahina for aggravated assault, conceding to the jury in closing argument that "maybe under these facts you would find that . . . there is evidence . . . for [the assault] charge."

¶36　Given the strength of the evidence supporting the one charge of which Fahina was convicted, combined with the limited and cumulative nature of Officer's testimony regarding Victim's out-of-court statements, we cannot conclude there is a reasonable likelihood that the jury would have acquitted Fahina of the aggravated assault charge had that testimony not been

---

1. The jury was instructed that it could convict Fahina of aggravated assault if he "a. Intentionally, knowingly, or recklessly: i. Attempted to do bodily injury to [Victim]; ii. Made a threat, accompanied by a show of immediate force or violence, to do bodily injury to [Victim]; or iii. Committed an act that caused bodily injury to [Victim] or created a substantial risk of bodily injury to [Victim]; and b. At the time of the act, he used i. A dangerous weapon; or ii. Other means or force likely to produce death or serious bodily injury."

admitted. Fahina therefore has failed to carry his burden of demonstrating that the trial court's alleged error was harmful, and we thus hold that the trial court did not commit reversible error in allowing the disputed testimony.

## CONCLUSION

¶37    In summary, even if the trial court erred in admitting Officer's testimony relating Victim's statements under the excited utterance exception to the rule against hearsay—on which we express no opinion—Fahina has not shown that the error was harmful given the brief and cumulative nature of the testimony and the strength of the State's case against him for aggravated assault. Accordingly, we affirm.

—————