STATE of Iowa, Plaintiff–Appellee,

v.

Jerome E. WATTS, Defendant–Appellant.

No. 88–99.

Court of Appeals of Iowa.

March 16, 1989.

William L. Wegman, State Public Defender, and B. John Burns, Asst. Public Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen. of Iowa, and Julie A. Halligan, Asst. Atty. Gen., for plaintiff-appellee.

Considered by SCHLEGEL, P.J., and HAYDEN and SACKETT, JJ.

HAYDEN, Judge.

A jury found defendant guilty of first-degree murder. He was charged with killing his former girlfriend.

On appeal, defendant: 1) claims the trial court erred by admitting gruesome photographs showing the victim's body after death and showing the location of multiple stab wounds on the body (he argues these photographs were cumulative of other evidence and their probative value was outweighed by their prejudicial effect); 2)

challenges the admission of hearsay testimony by the victim's sister (this testimony was admitted as an excited utterance exception to the hearsay rule); and 3) he challenges the sufficiency of the evidence necessary to prove the intent element of first-degree murder. We affirm.

The victim, Lori Conley, and defendant began living together in 1986. In August 1986 when defendant returned from Hawaii he was told Lori had been dating his friends. In late September or early October 1986 Lori went to the home of her sister, Becky Fenceroy. She had been badly beaten and physically abused. Lori told her sister defendant had caused her injuries. On June 24, 1987, Lori was at work at Siouxland Plasma, Incorporated. At about closing time a coworker observed Lori and defendant in an alley outside her place of work. Defendant had a hold on Lori's arm and refused to let her go back to work. Defendant took a knife from a blue towel he was carrying and stabbed Lori repeatedly. He then stabbed himself several times in the stomach and wrist.

## I.

### DID THE TRIAL COURT ABUSE ITS DISCRETION IN ADMITTING PHOTOGRAPHS OF THE VICTIM?

Dr. Gregg Galloway showed two photographs to the jury depicting Lori's unclothed body and the stab wounds. These were objected to by defendant and were overruled by the trial court. The State then introduced numerous other pictures showing these injuries. Defendant's attorney objected to each of these exhibits on grounds they were prejudicial and cumulative to other previous exhibits.

Dr. Galloway testified in detail about the types and number of wounds found on Lori and the condition of her body during the autopsy. He used these photographs to illustrate his testimony and to make it understandable.

■■■ On the issue of admissibility of these photographs we first review some basic evidentiary principles. Admissibility of photographs rests within the trial court's sound discretion. *State v. Chadwick,* 328 N.W.2d 913, 917 (Iowa 1983). On appeal, this court will overturn the trial court's ruling on admissibility only upon a showing of a clear abuse of discretion. *State v. Hall,* 235 N.W.2d 702 (Iowa 1975). The basic test is the relevancy of the photographs. *State v. Fuhrmann,* 257 N.W.2d 619, 624–25 (Iowa 1977). The State had the burden of establishing defendant killed Lori "willfully, deliberately and with premeditation." *See* Iowa Code § 707.2 (1987). These photographs were introduced to demonstrate the nature and the extent of the attack on the victim. This evidence had a direct bearing on the issue of premeditation and therefore was relevant. *See State v. Hall,* 235 N.W.2d 702 (Iowa 1975). Pictures of murder victims are not ordinarily excluded because they are gruesome, as murder is by nature gruesome. *State v. Seehan,* 258 N.W.2d 374, 378 (Iowa 1977). We hold the trial court did not abuse his discretion in admitting the photographs in question here into evidence.

## II.

### DID THE TRIAL COURT ABUSE ITS DISCRETION IN ADMITTING HEARSAY EVIDENCE UNDER THE EXCITED UTTERANCE EXCEPTION?

During trial, the trial court admitted the following testimony from Becky Fenceroy:

FENCEROY: Lori came to my house, and the front door wasn't locked. And she burst through the front doors and came up the steps of my house, and I observed her face being very badly beaten and bruised and swollen. Her eye was puffed up and the sclera of her eye was bloody red. Her lip was black and very swollen. She had petechia, very small bruising, about her forehead and some bruises on her neck.

THOMAN: Well, what was her—her demeanor at that time? Was she crying or laughing, or how was she—

FENCEROY: She was visibly shaken up. Her hands were shaking. Her voice was quivering. She—she was just very upset. She was not crying.

She said, "Don't say a word." And I said, "Oh, my God. What happened to you?" I said, "Did Jerome do this?" And she said, "Yes." I said, "What are you going to do?" She said, "I'm going to call the police."

Defendant contends the victim's declaration to Fenceroy did not fall within the purview of the excited utterance exception as it was a response to Fenceroy's question, ("Did Jerome do this to you?"), and not a statement.

■ Federal Rule of Evidence 803(2) defines the excited utterance exception as: "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Iowa had adopted Federal Rule of Evidence 803(2). *State v. Ogilvie*, 310 N.W.2d 192 (Iowa 1981). In construing the exception, the Iowa court has noted the statement must be spontaneous and not the product of reflection or fabrication. *State v. Stevens*, 289 N.W.2d 592 (Iowa 1980). The determination of the foundational requirements for admission of evidence under the excited utterance exception is within the trial court's discretion. *State v. O'Connell*, 275 N.W.2d 197 (Iowa 1979).

■ Excited utterances "must meet a requirement of spontaneity in order to possess a circumstantial guarantee of trustworthiness for admissibility." *Bratton v. Bond*, 408 N.W.2d 39, 45 (Iowa 1987), quoting with approval, *State v. Stevens*, 289 N.W.2d 592, 596 (Iowa 1980). The rationale behind this exception to the hearsay rule is that the declarant's statement is trustworthy because it is not the result of reflection and design; spontaneity indicates the statement is reactive to the situation and not carefully thought out. *Bratton*, 408 N.W.2d at 45.

■ To determine if a statement is spontaneous, the trial court must consider the circumstances under which the statements were made. Relevant factors include the nature of the startling event, whether the use of questions led to statements which otherwise would not have been made, the age and condition of the declarant, the subject matter of the statements used, and the lapse of time. *State v. Mateer*, 383 N.W.2d 533, 535 (Iowa 1986). No one factor is conclusive on whether a statement is admissible. *Id.*

■ When Lori came into her sister's house, she spoke first and made reference to her battered condition. "Don't say a word." As shown earlier by the quoted exchange, Lori's sister testified Lori had been badly beaten, she was "visibly shaken up," "shaking," "her voice was quivering," and she was "very upset." Lori voluntarily came to her sister's house in this condition. Under these circumstances, we determine the two questions by Lori's sister were of no significance. We hold Lori's statements to her sister were excited utterances and exceptions to the hearsay rule. They were admissible evidence in this trial. We affirm the trial court on this issue.

## III.

**WAS THERE SUFFICIENT EVIDENCE FOR A RATIONAL JURY TO FIND DEFENDANT POSSESSED THE NECESSARY INTENT FOR A CONVICTION OF MURDER IN THE FIRST DEGREE?**

■ The test for whether defendant's conviction was supported by sufficient evidence is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Robinson*, 288 N.W.2d 337, 339 (Iowa 1980). We apply the test in view of all the evidence submitted, not just that supportive of guilt. *Id.* at 340.

■ Defendant cites Dr. Galloway's testimony that defendant's blood-alcohol content at 3:40 p.m. on June 24, 1987, was 101 milligrams per deciliter. He claims this figure is above the criteria for intoxication set in Iowa Code section 321J.2(1)(b) (1987).

Tahirah Crawford testified for the State. She stated defendant stopped by her grandmother's house on the day of the murder.

He was carrying a blue bath towel under his arm and had a friendly conversation with his grandmother. She further testified defendant's speech was normal, his walk was normal, and he did not appear intoxicated.

Defendant's expert psychologist, Dr. Baker, testified in his opinion defendant was not capable of forming specific intent on the night in question. On the other hand, Dr. Taylor, an expert psychiatrist for the State, gave his opinion defendant was fully capable of deliberating and of premeditating and of forming the intent to kill. He also stated, based upon the amount of alcohol defendant drank and defendant's blood-alcohol level, it was his opinion the alcohol did not have a significant impact on defendant's behavior.

■ We do not agree with defendant's position in this division. The credibility of witnesses and the weight to be given their testimony are determinations properly reserved for the jury. *State v. Schertz*, 328 N.W.2d 320, 322 (Iowa 1982). We hold there was substantial evidence to support the jury's verdict. Substantial evidence means evidence which would convince a rational trier of fact defendant is guilty of the crime charged beyond a reasonable doubt. *Id.* at 321.

AFFIRMED.