**STATE of Utah, Plaintiff and Appellee,**

v.

**Bernard Franklin CUDE, Jr., Defendant and Appellant.**

No. 880115.

Supreme Court of Utah.

Dec. 29, 1989.

---

**1198**

Dan R. Knowlton, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Barbara Bearnson, Salt Lake City, for plaintiff and appellee.

HALL, Chief Justice:

Defendant Bernard Franklin Cude, Jr., appeals his conviction for aggravated burglary and aggravated sexual assault in violation of Utah Code Ann. §§ 76–6–203 (1978) (amended 1988 & 1989) and 76–5–405 (Supp.1988) (amended 1989).  He claims

that (1) the trial court erred in refusing to admit into evidence out-of-court statements defendant made to his clergyman, (2) the prosecutor made an improper remark in her closing argument that the court failed to correct, (3) defendant should have been convicted of attempted rape or forcible sexual abuse rather than aggravated sexual assault, (4) the court erred in refusing to allow argument or instruct the jury on potential sentences defendant might receive, and the instruction on penalty the court did give was erroneous, (5) defendant's minimum mandatory sentence is unconstitutional, and (6) defendant was denied his right to compulsory process and discovery. We affirm.

The victim in this case was home alone in the late evening when she became alarmed at her dog's incessant barking. She armed herself with a costume dagger and approached her bedroom—the area disturbing the dog. After she turned on the light, an attacker grabbed her, threw her on her bed, beat her, pulled off her top, and touched her breast. She could feel his erection as he lay on top of her. He tried to remove her pants, but was unsuccessful. The victim stabbed her attacker several times with the dagger. He tried to stay her defense, but ultimately fled the home, bleeding from his wounds.

Defendant arrived at his home that night shortly after the victim was attacked. His clothing was bloody, and his hands were cut; he also suffered from stab wounds on other areas of his body. His wife summoned their clergyman neighbor to assist defendant. The clergyman found defendant in a bathroom cleaning his wounds. Defendant offered the clergyman a "somewhat confusing" alibi for how he received his wounds, but at trial the clergyman's recitation of defendant's alibi was excluded as inadmissible hearsay. Defendant elected not to testify in his own defense.

The victim described the attacker to police—she had concentrated on his face during the attack, knowing that she would be required to identify him. She did not hesitate when she later picked his picture from a photo spread. Experts testified that defendant's wounds were consistent with having been made by a dagger and that they appeared to be defensive wounds. The wounds were generally in the areas in which the victim testified she inflicted them. Shoeprints matching those made by defendant's shoes were found outside the victim's home, and blood matching the characteristics of defendant's blood was found in the victim's room. Finally, a fingerprint positively identified as defendant's was found on the frame of the screen the attacker removed from the victim's window.

The jury found defendant guilty of aggravated burglary and aggravated sexual assault. The court sentenced defendant to five years to life for the aggravated burglary conviction and a minimum mandatory five-year-to-life term for the aggravated sexual assault conviction, the sentences to run concurrently.

Defendant claims that the court erred in excluding from trial the clergyman's recitation of defendant's out-of-court statement. He claims the testimony is admissible as an excited utterance under rule 803 of the Utah Rules of Evidence.

Hearsay is generally deemed untrustworthy since at the time of the declaration, the declarant is not under oath and at trial only the witness to the declaration—not the declarant—is available for cross-examination.[1] Some hearsay, however, is considered reliable because of the circumstances under which the declaration is made. Rule 803(2) excepts from the hearsay rule "excited utterances." An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."[2] "The theory of Exception (2) is simply that circumstances may produce a condition of excitement which temporarily stills the capacity of re-

---

1. *State v. Sibert,* 6 Utah 2d 198, 201, 310 P.2d 388, 390 (1957).

2. Utah R.Evid. 803(2).

flection and produces utterances free of conscious fabrication."[3]

■ A statement is admissible under rule 803(2) only if three conditions are satisfied: "(1) a startling event or condition occurred; (2) the statement was made while the declarant was under the stress of excitement caused by the event or condition; and (3) the statement relates to the startling event or condition."[4] Presumably, defendant's clergyman would have testified that defendant told him he had been in an automobile accident and an ensuing knife fight and that defendant had come directly home from the altercation to clean his hands. While this account satisfies the first and third requirements, it does not necessarily fulfill the second.

The clergyman testified outside the presence of the jury that the distance from what he understood to be the location of the purported fray to defendant's home was some 17 blocks—a five- to seven-minute trip. Another short period elapsed between defendant's arrival home and his conversation with his clergyman. As noted by this Court in *State v. Thomas*,[5] " 'The crucial question ... is whether the statement was made while the declarant was still under the influence of the event to the extent that his statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment.' "[6]

■ Generally, the shorter the gap between the startling event and the utterance, the more reliable the statement since the excitement of the event is unlikely to have yielded to reasoned reflection and conscious fabrication. However, the length of time between the event and the declaration is not a yardstick by which reliability can be measured.[7] The more accurate gauge—and the more difficult to read—is the state of the declarant's mind.[8]

Defendant cites *State v. Kaytso*[9] for the proposition that a lapse between the event and the declaration does not prevent a statement from being an excited utterance. We agree; it is not necessarily the time lapse that disqualifies a statement as an excited utterance, but rather the determination that the declarant was no longer under the stress of the event.[10] *Kaytso* involved statements made by a nine-year-old victim after she was raped by her sister's boyfriend. This Court recognizes that excitement generally lasts longer in children and fabrication is less likely.[11] Despite the two-hour lapse between the victim's rape and her statements, we found no error in the trial court's determination that the victim was still under the stress of the event. There are substantial differences, however, between a child's description of her rape to a doctor and a police officer and an adult's explanation of a lacerated hand to his wife and clergyman neighbor.

Was defendant still under the stress of the event? According to proffered evidence, he drove home 17 blocks, parked his truck, removed his bloody clothing and left it in the garage, and was in the process of washing his wounds before he offered his declaration. While defendant appeared nervous and agitated, his actions were controlled and responsible. Whether his alibi was fabricated is unknown, but that is not

---

3. Fed.R.Evid. 803(2) (advisory committee's note) (citation omitted). This Court may look to the federal advisory committee notes as well as federal court interpretation of the federal rules to aid in interpreting the Utah rules. *See State v. Gray*, 717 P.2d 1313, 1317 (Utah 1986).

4. *State v. Barber*, 747 P.2d 436, 438 (Utah Ct. App.1987) (quoting *United States v. Moore*, 791 F.2d 566, 570 (7th Cir.1986)).

5. 777 P.2d 445 (Utah 1989).

6. *Id.* at 449 (citations omitted) (quoting *Johnston v. Ohls*, 76 Wash.2d 398, 406, 457 P.2d 194, 199 (1969)).

7. *See* 6 Wigmore, *Evidence* § 17520(b), at 202–04 (Chadbourn rev. 1976); 2 G. Joseph & S. Saltzburg, *Evidence in America, The Federal Rule in the States* § 58.3, at 21 (1987) [hereinafter *Evidence in America* ].

8. *Evidence in America*, supra note 7.

9. 684 P.2d 63 (Utah 1984) (per curiam).

10. *See id.* at 64.

11. *See State v. McMillan*, 588 P.2d 162, 163 (Utah 1978).

the issue. The real issue was articulated by the trial court:

> [I]s [defendant] smart enough, in a period of five or ten minutes or whatever period of time lapses from the time the injury occurs until he arrives at home, to come up with a logical explanation that his wife will accept or his family will accept or the neighbors will accept, regarding the source of his injury?

The court found that defendant was not under the stress of the event, that he was capable of reasoned reflection, and that the statement to his clergyman was not an excited utterance. This Court will not disturb a trial court's ruling on the admissibility of evidence absent a showing of clear error.[12]

Defendant next claims that the prosecutor misstated the evidence in her closing argument and that the court erred by not correcting the misstatement. Defendant's case was centered on his alleged alibi. The victim testified that her attack ended at about 11 p.m., after which she immediately phoned 911. The transcript of the 911 call indicates on its face that it was recorded beginning at 11:06:50 p.m. A statement at the end of the transcript indicates that the recording stopped at 11:12:15 p.m. However, defendant's clergyman recalled that after he saw defendant washing his wounds in the bathroom, he looked at his watch and the time was 10:50 p.m. Defendant argued to the jury that if the victim's attack ended at 11:06 p.m. he could not be the perpetrator because he was home at 10:50 p.m.

In her closing argument, the prosecutor said that the 911 tape "records the time at the end of the call, after all the lapses and pauses, not at the beginning." While the meaning behind the prosecutor's remark is less than clear, it might imply that the 911 call ended at 11:06 p.m. (and thus started sometime earlier) rather than at 11:12 p.m. In any event, the statement was the apparent impetus behind the jurors' asking during deliberations, "What time did the 911 call begin? [11:]06 hrs/50 secs?" This specific question went unanswered.

The prosecutor's comment is susceptible of more than one interpretation; we hesitate to earmark it a misstatement. However, even assuming the comment is a misstatement, the 911 transcript clearly indicates that the victim's call was received after 11:06 p.m. The 911 transcript was admitted into evidence and was presumably reviewed by the jury. Rule 30(a) of the Utah Rules of Criminal Procedure requires, "Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded." Considering all of the circumstances in this case, there is no reasonable likelihood that the result would have been different absent the prosecutor's statement.[13] Defendant's claim fails, as the statement did not affect his substantial rights.

Defendant next claims that he was improperly convicted of aggravated sexual assault and that he should have been charged with attempted rape or forcible sexual abuse. He claims that the attempted rape, forcible sexual abuse, and aggravated sexual assault statutes proscribe essentially the same conduct but impose different penalties. If two statutes proscribe essentially the same conduct, defendant argues, but impose different penalties, a violater should be charged with violating the statute that carries the lesser penalty.

Utah Code Ann. § 76-5-405 (Supp.1988) (amended 1989) defines aggravated sexual assault:

> A person commits aggravated sexual assault if in the course of a rape or attempted rape ... or forcible sexual abuse or attempted forcible sexual abuse:
>
> > (a) the actor causes bodily injury to the victim....

Rape is defined as an actor having "sexual intercourse with another person, not the

---

12. *State v. Williams,* 773 P.2d 1368, 1370 (Utah 1989).

13. *State v. Johnson,* 771 P.2d 1071, 1073 (Utah 1989); *State v. Tillman,* 750 P.2d 546, 555 (Utah 1987).

actor's spouse, without the victim's consent."[14]

In *State v. Smathers*,[15] we held that the elements of rape and aggravated sexual assault are distinguishable. Since *Smathers*, however, the aggravated sexual assault statute has been amended and now requires the infliction of "bodily injury" as an element of the crime rather than the infliction of "serious bodily injury."[16] Defendant asserts that the legislature has eliminated any distinction between rape and aggravated sexual assault since "the essence and gravamen of the offense of rape is force, violence, assault, and intimidation."

▪▪▪ Violence is the accompaniment of many—but not all—rapes. A rape accomplished by means of trickery or the rape of an unconscious, inebriated, or mentally incompetent victim will not necessarily result in the infliction of "bodily injury." While in some instances penetration itself may constitute bodily injury,[17] that is not always the case, particularly when the victim is an adult. Generally, rape and the distress caused by penetration are one thing; bodily injury associated with a beating is another. We see a sufficient difference between rape and aggravated sexual assault to justify the statutory distinction. And in this case, where the victim suffered blackened eyes, a bloodied nose, a wrenched neck, and contusions on her face, shoulder, arms, buttocks, and legs, we find no error in defendant's being charged with committing the crime with the greater penalty.

▪▪▪ Likewise, aggravated sexual assault is distinguishable from forcible sexual abuse. Forcible sexual abuse is defined in Utah Code Ann. § 76–5–404 (Supp.1989):

A person commits forcible sexual abuse if the victim is 14 years of age or older and, *under circumstances not amounting to* rape, object rape, sodomy, or *attempted rape* or sodomy, the actor touches the anus, buttocks, or any part of the genitals of another, or touches the breast of a female, or otherwise takes indecent liberties with another, or causes another to take indecent liberties with the actor or another, with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person, without the consent of the other, regardless of the sex of any participant.

(Emphasis added.)

The evidence in this case indicates that defendant attempted to rape his victim. Forcible sexual abuse is only applicable "under circumstances not amounting to ... attempted rape." Defendant was properly charged with aggravated sexual assault rather than forcible sexual abuse or attempted rape. We find no error in the charge brought against him.

Defendant next claims that the trial court erred when it refused to instruct or allow counsel in closing argument to apprise the jury of potential sentences defendant might receive. He reasons that the jury's verdict might have been different were it aware of the minimum mandatory sentence a conviction for aggravated sexual assault imposes. He also claims that the instruction on penalty the court did provide was misleading and erroneous.

▪▪▪ Generally speaking, it is the jury's duty to determine the innocence or guilt of the accused.[18] The court's duty is to impose sentencing.[19] Possible punishment, then, is usually not a proper matter

14. Utah Code Ann. § 76–5–402 (Supp.1989).

15. 602 P.2d 708, 710 (Utah 1979).

16. *See* 1983 Utah Laws ch. 88, § 25.

17. *State v. Mitchell*, 769 P.2d 817, 818 (Utah 1989) (digital penetration of child caused "physical pain" which is "bodily injury" under aggravated sexual abuse of child statute).

18. *See* Utah R.Crim.P. 19(d) (jury is the exclusive judge of questions of fact).

19. Utah R.Crim.P. 22(c). In the bifurcated proceedings of a capital case, however, the jury may also determine punishment. Utah Code Ann., 76–3–207 (Supp.1989).

for jury consideration.[20] A defendant is either not guilty or guilty of a particular charge; determination of innocence or guilt should not be swayed by a jury's sympathetic or antipathetic feelings toward a defendant because of an anticipated sentence. In this instance, we find no error in the court's refusal to allow argument and failure to instruct the jury on defendant's potential sentence.

The instruction on penalty that the court did provide reads:

In arriving at a verdict in this case, you shall not discuss nor consider the subject of penalty or punishment, as that is a matter which lies with the Court and other governmental agencies, and must not in any way affect your decision as to the innocence or guilt of a defendant.

Defendant reasons that the language "punishment ... is a matter which lies with the Court" misled the jury into thinking the trial court could sentence defendant to a light term, when in reality the court had no discretion over defendant's minimum mandatory sentence. That the court has no discretion in imposing a minimum mandatory sentence is not correct. The standard sentence is ten years. In the presence of aggravating or mitigating circumstances, a five- or fifteen-year sentence can be imposed.[21] The determination of aggravating or mitigating factors is a decision entrusted to the trial court. While the instruction in this case could have been

more artfully drafted, we find no misstatement of the law and no error.

▮▮▮ Defendant next claims that his minimum mandatory sentence violates the state constitution's prohibition of cruel and unusual punishment.[22] He appears, however, to rely primarily on the test enunciated by the United States Supreme Court in *Solem v. Helm*[23] for determining whether a sentence violates the eighth amendment to the United States Constitution. While this Court has previously applied the *Solem* factors to an analysis of whether a sentence is cruel and unusual,[24] we have not specifically distinguished the state and federal constitutional analyses. Because defendant makes little effort in his brief to develop an independent state analysis, we do not differentiate the state and federal provisions here.[25]

Suffice it to say, however, that application of the factors in *Solem* decimates defendant's claim. The gist of defendant's contention is that the harshness of his penalty is disproportionate to the gravity of his offense and that his sentence is not comparable to the penalty for similar crimes. His initial premise, though, is that there is no difference, or very little difference, between aggravated sexual assault and attempted rape or forcible sexual abuse. As noted above, we reject that premise.[26] Defendant fails to acknowledge the heinous nature of sexual crimes, the abhorrence of which is compounded by a victim's physical injury.[27] His punishment is neither cruel nor unusual.

**20.** *State v. Koch,* 138 Ariz. 99, 105, 673 P.2d 297, 303 (1983) (en banc); *People v. Holt,* 37 Cal.3d 436, 208 Cal.Rptr. 547, 559–60, 690 P.2d 1207, 1219 (1984) (en banc); But *cf. State v. Inlow,* 44 Utah 485, 507–08, 141 P. 530, 538–39 (1914) (on application for rehearing) (trial court has discretion to charge jury respecting punishment).

**21.** Utah Code Ann. §§ 76–5–405(2) (Supp.1988) (amended 1989), –3–201 (Supp.1989).

**22.** Utah Const. art. I, § 9.

**23.** 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

**24.** *See State v. Bishop,* 717 P.2d 261 (Utah 1986). "The factors a court must compare for determining under the eighth amendment whether a sentence is proportionate to the crime are (i) the

gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Id. at 269 (quoting *Solem,* 463 U.S. at 292, 103 S.Ct. at 3011).

**25.** *See Bishop,* 717 P.2d at 267; *id.* at 272 (Durham, J., concurring in the result).

**26.** *See supra* text accompanying notes 14 through 17.

**27.** *See State v. Bell,* 754 P.2d 55, 57 (Utah 1988) ("Rape is one of the most heinous crimes in the criminal law and has traditionally been dealt with as such. It is a crime of violence. The crime of aggravated sexual assault is a crime of even greater severity....").

Defendant finally claims that his right to compulsory process and discovery was denied by the quashing of his subpoenas *duces tecum* at the preliminary hearing. In quashing defendant's subpoenas, the magistrate instructed defendant to follow the provisions of rule 16 of the Utah Rules of Criminal Procedure in his discovery efforts. Defendant apparently followed this instruction with the State's cooperation. The record is devoid of any expression of dissatisfaction or objection to this method of discovery, and there is no evidence that defendant was prejudiced.

Having reviewed defendant's other claims of error, we find them to be without merit.

Affirmed.

HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.

ZIMMERMAN, J., concurs in the result.