2000 Utah Ct. App. 188

**WEST VALLEY CITY, Plaintiff and Appellee,**

v.

**Wade HUTTO, Defendant and Appellant.**

**No. 990211–CA.**

Court of Appeals of Utah.

June 22, 2000.

Steven D. Miller, Larsen & Rammell, West Valley City, for Appellant

J. Richard Catten, West Valley City Attorney's Office, West Valley City, for Appellee.

Before Judges BENCH, BILLINGS, and ORME.

## OPINION

ORME, Judge:

¶ 1 Appellant Wade Hutto appeals his conviction for assault in violation of Utah Code Ann. § 76–5–102 (1999), and his conviction for criminal mischief in violation of Utah Code Ann. § 76–6–106 (1999), both arising from a domestic dispute with his live-in girlfriend. Specifically, Hutto challenges the trial court's admission of the victim's out-of-court statements under the hearsay rule's "excited utterance" exception. We reverse defendant's convictions and remand for a new trial.

## BACKGROUND

¶ 2 On October 25, 1998, Officer Jensen of the West Valley City Police Department was dispatched at approximately 9:00 a.m. to respond to a "late report" of domestic violence. Upon arrival at the destination specified by dispatch, Officer Jensen found the victim at her mother's apartment, about six blocks from defendant Hutto's residence. Officer Jensen observed that the victim was dressed in a t-shirt and jeans and was not wearing shoes or socks. Jensen also saw a small cut on the victim's forehead, red marks on her neck, a one- to two-inch-diameter red mark on her abdomen, and a four- or five-inch-diameter red mark on her back. The victim acknowledged she had called the police and during the next thirty to forty-five minutes told Jensen what had happened six hours earlier.

¶ 3 During the interview, the victim told Jensen that her live-in boyfriend, Hutto, had assaulted her between 3:00 and 3:30 a.m. that morning. She told Jensen that she was in bed asleep when Hutto woke her up and asked her to go get some drugs. She told Hutto it was early, she was tired, and she did not want to go. When she refused, Hutto got angry and started hitting and pushing her. The victim stated that during the argument Hutto (1) hit her in the side of her head, which knocked her head into another object, cutting her forehead; (2) hit her in the back with something, although she did not know what it was; and (3) had stood on her neck. The victim told Jensen that she had then left Hutto's residence and ran to her mother's house.

¶ 4 During the interview, Jensen asked the victim to fill out a witness statement and had to continually ask her to keep writing, as she was quite distracted and agitated. Only the first page of this statement was found and entered into evidence at trial because the remainder had been lost. This portion of the written statement was admitted for the limited purpose of helping determine whether the victim's statements were excited utterances. The statement, in the victim's handwriting, featured each "i" dotted with a small heart. Also during the interview, the victim's mother was present and was herself so agitated that another officer was "dealing with her, keeping her calm so that [Jensen] could talk to the victim."

¶ 5 After concluding the interview, Jensen went to Hutto's residence to further investigate. Jensen found Hutto working in his garage. When asked about the incident, Hutto denied touching the victim and said, "she does it to herself" and "[s]he inflicts

injuries upon herself." Officer Jensen observed wood chips scattered around the kitchen of the home and saw a pile of what appeared to be pieces of a desk or table. Later, this was determined to be the remains of a dresser the victim owned. At trial, Hutto took the stand and denied physically assaulting the victim in any way. He alleged that he had merely asked the victim about the stain he was going to use on the dresser he was restoring for her. He said she responded by throwing a dresser drawer on his foot, at which point Hutto went out to the garage to avoid a fight, and when he returned he found the dresser destroyed and the victim gone.

¶ 6 At trial, the victim did not testify.[1] Instead the prosecutor called only one witness, Officer Jensen, to relate what the victim had said about the incident. The trial court allowed Jensen to recount the statements made by the victim, in order to determine whether the statements were excited utterances admissible under Rule 803(2) of the Utah Rules of Evidence. Hutto's counsel objected, stating that Hutto would be denied his rights to confront and cross-examine the victim—rights guarantied by the Utah and United States Constitutions—and that the statements were not excited utterances.

¶ 7 During Jensen's testimony, she described the victim as "extremely upset," "very agitated," and "quite nervous." Jensen also described the victim as fluctuating emotionally throughout the interview, and stated that even during calm periods the victim would still shake and cry. During the more agitated periods, Jensen described the victim as unable to focus.

¶ 8 The trial court concluded from these facts that the victim's statements about the events, many of which were in response to Jensen's questions, were excited utterances. Jensen was allowed to recount the story told to her during her interview with the victim, basically in its entirety. The only other trial

witness was Hutto. Hutto was convicted and now appeals.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 9 The sole issue on appeal is whether the trial court erred in admitting the victim's out-of-court statements to Officer Jensen under the hearsay rule's "excited utterance" exception. "We will not disturb a trial court's admission of evidence unless the court has clearly abused its discretion." *State v. Kinross*, 906 P.2d 320, 322–23 (Utah Ct.App.1995). *See State v. Pena*, 869 P.2d 932, 938 (Utah 1994).

## NATURE OF THE "UTTERANCE"

¶ 10 Hearsay is defined under Rule 801(c) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Utah R. Evid. 801(c). Hearsay statements are "generally excluded as evidence on the ground that, since the statements are not made under oath, and often only the witness to the declaration—not the declarant—is available for cross-examination at trial, the statement is generally unreliable." *State v. Mickelson*, 848 P.2d 677, 683 (Utah Ct.App.1992). *See State v. Cude*, 784 P.2d 1197, 1199 (Utah 1989). Moreover, the fact finder is denied the opportunity to observe the witness, so "the witness's perception, interpretation, memory, sincerity, and communication cannot be fully tested." Edward L. Kimball & Ronald N. Boyce, *Utah Evidence Law* § 8–36 (1996).[2]

¶ 11 Sometimes, however, hearsay statements are made under circumstances which offer substantial guaranties of trustworthiness, minimizing the likelihood of falsification. *See Cude*, 784 P.2d at 1199–1200 ("Some hearsay ... is considered reliable because of the circumstances under which the declaration is made."). "Excited utterances" are one such exception. *See* Utah R. Evid. 803(2).

---

1. The record does not reflect why the victim did not testify, why she was absent from the proceedings, whether she had been subpoenaed, or whether her whereabouts were even known.

2. The trial court acknowledged its concern with its inability to judge the victim's credibility, stating: "[Counsel], you are right that we are disadvantaged by not having the victim here today. I would very much like the opportunity to weigh her credibility.

¶ 12 Rule 803(2) recognizes an exception to the usual rule against admitting hearsay for "statement[s] relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition," whether or not the declarant is available to testify at trial. Utah R. Evid. 803(2). The reasoning is simple: the stress and excitement of the event suppress the declarant's ability to reflect or calculate self interest in a manner that would produce a lie. *See State v. Kinross,* 906 P.2d 320, 324 (Utah Ct.App.1995) (" 'The theory of [the excited utterance exception] is simply that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication.' ") (quoting Fed R. Evid. 803(2) advisory committee note).[3] Lacking the "wherewithal to fabricate a falsehood, 'the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous.' " *Mickelson,* 848 P.2d at 683 (quoting *Idaho v. Wright,* 497 U.S. 805, 819, 110 S.Ct. 3139, 3149, 111 L.Ed.2d 638 (1990)).

¶ 13 The classic example of an excited utterance is a witness's exact recollection of the declarant's spontaneous "sound bite"—an uncoached blurting out—made while the declarant observed the exciting event or closely thereafter. *See, e.g., United States v. Lawrence,* 699 F.2d 697, 703 (5th Cir.) ("You're a dead man."), *cert. denied,* 461 U.S. 935, 103 S.Ct. 2103, 77 L.Ed.2d 309 (1983); *State v. Bray,* 106 Ariz. 185, 472 P.2d 54, 57 (1970) ("Daddy shot Mommy. Mommy is dead."); *Layman v. State,* 652 So.2d 373, 375 (Fla. 1995) ("[O]h my God."); *Walczak v. General Motors Corp.,* 34 Ill.App.3d 773, 340 N.E.2d 684, 687 (1976) ("It won't turn, Mom," referring to steering wheel); *Wright v. Swann,* 261 Or. 440, 493 P.2d 148, 149–50 (1972) ("Oh, God. . . . It wasn't your fault[.]"); *State v.*

*Smith,* 1985 Tenn.Crim.App. LEXIS 3020, *5 (Feb. 14, 1985) ("the son-of-a-bitch cut me").

¶ 14 The trial court exceeded its discretion in allowing Jensen to recount her entire interview with the victim, instead of limiting the admission of her testimony to particularized utterances. *See State v. Thomas,* 777 P.2d 445, 449 (Utah 1989). A witness simply cannot recount a victim's entire story under the guise of the excited utterance exception. The exception is much narrower than that, and is limited to truly "spontaneous outbursts." *United States v. Wolak,* 923 F.2d 1193, 1196 (6th Cir.), *cert. denied,* 501 U.S. 1217, 111 S.Ct. 2824, 115 L.Ed.2d 995 (1991). *See also Thomas,* 777 P.2d at 449 ("[W]e believe that we would be pushing the limits of the rule to hold admissible the entire contents of this . . . interview as an 'excited utterance.' "). The Rule 803(2) hearsay exception permits excited utterances to be recounted, not the ongoing discourse of an excited individual. Certainly, a narrative overview of an officer's thirty to forty-five minute conversation with an excited victim cannot be equated to spontaneous, excited utterances like those listed above, even if the officer's synopsis relates to the exciting event. *See Thomas,* 777 P.2d at 449. Jensen's comprehensive narrative of her conversation with the victim goes well beyond a recounting of excited utterances. However, even if the trial court had properly limited the officer's testimony to particular statements made by the victim,[4] the statements still could not properly come in as excited utterances given the record before us.

## NATURE OF THE EXCITEMENT

¶ 15 In Utah, a three-pronged test is applied to determine whether a statement qualifies as an excited utterance. Hearsay statements fall within the excited utterance exception when " '(1) a startling event or condition occurred, (2) the statement was made while the declarant was under the

---

3. "Utah courts 'may look to the federal advisory committee notes as well as federal court interpretation of the federal rules to aid in interpreting the Utah rules.' " *State v. Kinross,* 906 P.2d 320, 324 n. 2 (Utah Ct.App.1995) (citation omitted).

4. While the trial court indicated it was limiting the excited utterances to only those statements relating to the exciting event, it did not actually detail which statements it was referring to, and the officer's testimony included a complete retelling of the victim's story.

stress of excitement caused by the event or condition, and (3) the statement relates to the startling event or condition.' " *State v. Cude,* 784 P.2d 1197, 1200 (Utah 1989) (quoting *State v. Barber,* 747 P.2d 436, 438 (Utah Ct.App.1987)). *Accord State v. Kinross,* 906 P.2d 320, 323 (Utah Ct.App.1995). Regarding the second prong, the declarant has to have "remained" under the original, uninterrupted, and unsubsided stress of the startling event when making the statements. *Kinross,* 906 P.2d at 323. *See State v. Mickelson,* 848 P.2d 677, 684 (Utah Ct.App.1992).

¶ 16 The Utah Supreme Court has recognized that the second prong—whether the victim's statements were produced under the stress and excitement of the startling event—is "[u]sually the most difficult issue in determining the admissibility of an excited utterance." *State v. Smith,* 909 P.2d 236, 240 (Utah 1995).

> [W]hether the statement was uttered with a spontaneity produced by emotional excitement to a degree that provides a warrant of trustworthiness ... requires an evaluation of a variety of factors, including the nature of the startling event and the intensity of the excitement or other emotional effect on the declarant.

*Id.* Relevant factors considered previously by the Utah Supreme Court include the declarant's age, elapse of time between event and statement, the nature of the event, the apparent emotional state and intensity of emotional reaction, hospitalization, whether the statement was spontaneous or in response to a question, and the declarant's familiarity with his or her surroundings. *See id.; State v. Thomas,* 777 P.2d 445, 449 (Utah 1989); Edward L. Kimball & Ronald N. Boyce, *Utah Evidence Law* § 8–45 (1996).

■ ¶ 17 These factors are considered rather subjectively for each individual declar-ant, as no two declarants have the same reaction to a given set of events.[5] *See State v. Smith,* 315 N.C. 76, 337 S.E.2d 833, 841 (1990); *State v. Carlson,* 311 Or. 201, 808 P.2d 1002, 1011–12 (1991) (recognizing uniquely subjective nature of excited utterance test). Courts need only concern themselves with the particular declarant's actual stress and excitement given all the factors, not a reasonable person's response to the same situation.[6] *See, e.g., Kinross,* 906 P.2d at 324 (subjective reliability of two-year-old victim's statement); *State v. Mickelson,* 848 P.2d 677, 686 n. 8 (Utah Ct.App.1992) (subjective reliability of statement made by elderly victim with debilitating mental condition, albeit five hours after incident); *State v. Kaytso,* 684 P.2d 63, 64 (Utah 1984) (per curiam) (subjective reliability of statement of rape victim even though it was in response to police questioning); *United States v. Scarpa,* 913 F.2d 993, 1017 (2d Cir.) (subjective reliability of statement of victim of beating who made statement five to six hours after startling event but while still being pursued by "hit man"), *cert. denied,* 498 U.S. 816, 111 S.Ct. 57, 112 L.Ed.2d 32 (1990); *Ryan v. State,* 899 P.2d 1371, 1377 (Alaska Ct.App. 1995) (unreliability of statement of alleged rape victim, who, despite exhibiting evidence of great emotional stress, had spent several hours with her boyfriend before reporting rape).

¶ 18 Therefore, while the passage of a given amount of time after an exciting event might well be enough separation for one declarant's stress and excitement to recede, it might not be enough for another. *See Cude,* 784 P.2d 1197, 1200 (Utah 1989) ("Generally, the shorter the gap between the startling event and the utterance, the more reliable the statement.... However, the length of time between the event and the declara-

---

5. "[T]he fact that another person in a similar situation might not have been excited does not suffice to bar resort to the exception." 4 David W. Louisell & Christopher B. Mueller, *Federal Evidence* § 439 (1980). For example, while most drivers in a five-mile-per-hour fender-bender might be well beyond the stress and excitement of the minor accident by the time they exchange nods of reassurance that all is fine and no damage has been done, or at least by the time they arrive home, it is unlikely a sixteen-year-old who received her license that very day and who is driving alone in the new family car for the first time would recede from the stress and excitement of that moment quite as quickly.

6. By contrast, the trial court in this case, referring to what the victim had experienced, stated, "I think that's an event that a reasonable person would expect to result in stress that would continue for some time."

tion is not a yardstick by which reliability can be measured."). Moreover, while a long delay between the exciting event and the utterance may be a valid indicator that the stress has worn off enough to "'permit reflective thought'" for one declarant, another declarant may still be sufficiently nervous or distraught to rebut what amounts to a presumption that the stress has subsided. *Mickelson*, 848 P.2d at 685 (quoting Edward W. Cleary, *McCormick on Evidence* § 297, at 856 (3d ed.1984)). And, while being questioned by the police—itself a rather sobering experience—after being with a friend in a comfortable environment for a long time would almost invariably negate the requisite level of stress or excitement, *see Ryan*, 899 P.2d at 1377, not all declarants are the same and there may be exceptional cases.

¶ 19 This is not such an exceptional case. We note that the victim traveled six blocks to her mother's house, had approximately six hours before speaking to Officer Jensen, was in the familiar environment of her mother's home, and was being questioned by a police officer when making her statements. These factors "support a presumption that, at the time the statements were made, [the victim] was no longer under the 'stress of excitement caused by the event or condition.'" *Mickelson*, 848 P.2d at 686 (quoting Utah R. Evid. 803(2)).

¶ 20 To rebut such a presumption, there must first be sufficient evidence presented by the party seeking to offer the excited utterance from which the trial court could logically conclude the stress and excitement of the startling event were in full force and effect for the declarant, without lapses, when the statement was made. *See United*

States v. Sowa, 34 F.3d 447, 452–53 (7th Cir.1994) (permitting three year old's identification of assailant, notwithstanding twenty-minute delay, when child had been crying continuously before making identification), *cert. denied*, 513 U.S. 1117, 115 S.Ct. 915, 130 L.Ed.2d 796 (1995); *State v. Cude*, 784 P.2d 1197, 1200 (Utah 1989). The prosecution failed to present such evidence in this case.[7]

¶ 21 Had the victim's mother been the trial witness, with the victim having made a specific statement upon bursting into the home still in a panicked state, it would present a very different question. In *State v. Watts*, 441 N.W.2d 395 (Iowa Ct.App.1989), for example, a case with circumstances somewhat like the present case, the declarant ran to her sister's home immediately after being abused by her live-in boyfriend. *See id.* at 397–98. She burst into her sister's home without knocking, ran into her sister's bedroom and said, "Don't say a word." Her sister responded, "Oh, my God. What happened to you? Did [your boyfriend] do this?" And the declarant said, "Yes.... I'm going to call the police." *Id.* at 398. Unlike the present case, the statements in *Watts*, limited to a few short "sound bites," although solicited and made in a familiar environment, were bolstered by enough other factors showing sufficient spontaneity and reliability to be admitted. *See id.*

¶ 22 In this regard, it must be emphasized that not every statement made by an excited person is an excited utterance for purposes of the hearsay rule. Admittedly, Officer Jensen's testimony showed that the victim was excited. She was "extremely upset," "very agitated," and "quite nervous," fluctuating emotionally, shaking and crying, and unable to focus. This reaction is not unexpected,

---

7. There are limited instances when utterances in response to police questioning, or in a familiar environment, or even after several hours' delay, qualify as excited utterances. But such instances are exceptional—not typical—and truly press the outer limits of the doctrine. *See State v. Smith*, 909 P.2d 236, 241–43 & n. 6 (Utah 1995). Such exceptional cases must contain compelling indications of continuing, uninterrupted stress from the original event in order for courts to find rebutted the presumption that the elapse of time, familiar environment, and similar indicators diffused the stress of the event. *See Gross v. Greer*, 773 F.2d 116, 119–20 (7th Cir.1985) (finding excited utterance when terrified four-year-old

child, found cowering beneath blanket, made statement relating to murder, despite twelve-hour delay); *State v. Bowler*, 892 S.W.2d 717, 720–21 (Mo.Ct.App.1994) (finding excited utterance when 12–year-old girl made statement regarding attempted sexual abuse immediately upon being discovered under neighbor's car where she had hidden until early morning in constant fear that man was still pursuing her); *State v. Guizzotti*, 60 Wash.App. 289, 803 P.2d 808, 812 (finding excited utterance seven hours following rape during which time victim thought she was being pursued by rapist, hid under boat tarp, and feared for her life), *review denied*, 116 Wash.2d 1026, 812 P.2d 102 (1991).

and, in fact, is a reaction mentioned in other cases in which the statements of the excited individual were still not considered excited utterances.[8] *See Cude,* 784 P.2d at 1200 (recognizing defendant appeared nervous and agitated); *United States v. Hall,* 165 F.3d 1095, 1108–09 (7th Cir.) (statement not admissible as excited utterance because lapse of time militated against spontaneity, despite pale appearance and agitated state of declarant), *cert. denied,* 527 U.S. 1029, 119 S.Ct. 2381, 144 L.Ed.2d 784 (1999); *Ryan,* 899 P.2d at 1377; *State v. Binder,* 1990 Wisc. App. LEXIS 535, \*7, 1990 WL 118017, \*4 (Wisc.Ct.App.1990) (noting trial court recognized stress declarant was under but refused to find statement excited utterance).

¶ 23 Given the six-hour gap and the other factors in this case, the trial court exceeded its discretion in admitting the victim's statements without the prosecution first providing sufficient evidence that the stress of the exciting event was continuous and that the declarant never had time to reflect. *See, e.g., United States v. Mitchell,* 145 F.3d 572, 576–77 (3d Cir.1998) (holding anonymous note not admissible as excited utterance without proof that note's author was under stress of excitement while writing note); *Miller v. Keating,* 754 F.2d 507, 512 (3d Cir.1985) (finding error in admission of statements of unavailable witness when witness's excitement upon observing event not established). In this instance, the trial court based its decision on little more than an emotional reaction by the victim that would be typical of almost any victim retelling a personally traumatic event. It came to its conclusion without having any evidence before it regarding what happened in the intervening six hours the victim spent at her mother's home—something about which the officer had no knowledge whatsoever. Did the victim's mother comfort her, get all the details of what had happened, and together talk out what they should do next? Did the victim have some hot tea, watch some late-night television, or get some sleep?

Or was the victim uncontrollable, pacing or hiding behind her mother's couch the entire time for fear that Hutto was continuing to pursue? This important link in the chain is missing, and we simply have no way to know.[9]

¶ 24 Without any indication of the victim's emotional state during this intervening time, there simply is not enough evidence to rebut the presumption that the stress had subsided with her relocation to a safe environment and the elapse of several hours. Once a declarant has presumably calmed after an exciting event, the guaranties of trustworthiness are forever lost, and cannot be artificially revived by arousing the declarant's excitement a second time, whether through a police officer's pointed questions, a mother's agitation, or just the experience of recounting (and thus perhaps reliving) the earlier trauma.

## CONCLUSION

¶ 25 The trial court exceeded its discretion by permitting a synopsis of a thirty to forty-five minute dialogue between a questioning officer and a victim and not limiting the testimony to specific statements. Moreover, while the trial court found the victim exhibited intense excitement, the prosecution presented inadequate evidence to overcome the presumption, arising from the circumstances, that the victim's distress had subsided. Having concluded that Jensen's statements were inadmissible hearsay, we conclude there was insufficient evidence to convict Hutto and therefore are compelled to reverse and remand for a new trial or such other proceedings as may now be in order.

¶ 26 WE CONCUR: RUSSELL W. BENCH, Judge and JUDITH M. BILLINGS, Judge

---

8. Thus, the victim's emotional reaction here could very well have been the result of retelling the incident, rather than a result of remaining continuously under the original stress. Emotionalism in recounting a distressing event hours, days, or even years later is not uncommon, but it does not make the recounting an excited utterance.

9. At the very least the prosecution should have called the victim's mother to recount what transpired between 3:00 and 9:00 a.m. Perhaps the mother could have explained how the stress was continuous and offered the victim no time to reflect on the events with deliberation, much less to concoct a story.