2006 UT App 474

STATE of Utah, Plaintiff and Appellee,

v.

Seruka TILIAIA, Defendant and Appellant.

No. 20041030–CA.

Court of Appeals of Utah.

Nov. 30, 2006.

---

Jennifer Gowans and Randall K. Spencer, Fillmore Spencer LLC, Provo, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Christine F. Soltis, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BENCH, P.J., BILLINGS and ORME, JJ.

## OPINION

ORME, Judge:

¶ 1 Defendant Seruka Tiliaia appeals his conviction of one count of murder, two counts of aggravated assault, and one count of obstruction of justice. Tiliaia argues that his trial counsel rendered ineffective assistance, that the prosecutor engaged in misconduct during closing arguments, and that the trial court erred in excluding a witness from testifying and in excluding certain hearsay testimony. We affirm.

## BACKGROUND [1]

¶ 2 Tiliaia, along with several of his friends, attended a party at a residence in Kearns on the evening of September 29, 2001. At the party, one of Tiliaia's friends, Ezekiel House, became involved in a game of craps in the kitchen. When the winning player decided to leave the game, House became upset, and the two players got into a heated argument, threatening and shoving each other. The two were ordered outside, and some of the partygoers started to push House into the living room and toward the front door. House initiated a scuffle in the living room, assaulting individuals previously uninvolved in the commotion.

¶ 3 As the confrontation escalated, Tiliaia pulled a handgun from his waistband and fired it twice into the living room ceiling. He then pointed the gun at members of the crowd, who backed away. Tiliaia and his friends, including House, made their way toward the front door and exited the house. Some of the partygoers followed onto the front porch and watched as Tiliaia and his friends walked away. When Tiliaia was ten to fifteen feet down the driveway, he stopped, turned around, pointed the gun toward the house, and fired multiple times. His shots killed one partygoer and injured two others. Tiliaia and his friends then fled the area and later dumped the gun into the Jordan River.

¶ 4 Tiliaia was later arrested and charged with murder, obstruction of justice, and several counts of assault. During his jury trial, he attempted to call Marco Etsitty as a witness even though Etsitty, along with several other witnesses, had not been included on the formal witness list. The trial court refused to allow Etsitty to testify, reasoning

---

1. "On appeal from a jury verdict, we view the evidence and all reasonable inferences in a light most favorable to that verdict and recite the facts accordingly." *State v. Gordon,* 913 P.2d 350, 351 (Utah 1996).

that because he had been subpoenaed by the defense approximately three weeks prior to trial, he should have been included on the formal witness list. The trial court also refused to allow into evidence hearsay statements made by James Storm during a cell phone call. These statements were to the effect that Storm was present when the fight started, was in the front yard when the shootings occurred, and saw House and another of Tiliaia's friends shooting toward the house. The court determined that Tiliaia did not lay adequate foundation to establish that Storm's statements qualified as an excited utterance and that the statements were therefore inadmissible hearsay.

¶ 5 On the final day of trial, during closing arguments, the prosecutor told the jury, "You were selected to be on this jury to act as the voice and the conscience of this community" and argued that "if you say to this man that he is not guilty, it is as true to say that there has been no crime." Tiliaia's counsel objected to these statements. Also in closing argument, the prosecutor summarized testimony by saying that a witness testified that she saw Tiliaia walk out the door with the gun in his hand and that "the black guy" who had asked Tiliaia for the gun remained in the house when Tiliaia ran out the door. Tiliaia's counsel did not object to this characterization of the evidence.

¶ 6 The jury returned a guilty verdict on one count of murder, two counts of aggravated assault, and one count of obstruction of justice. After sentencing, Tiliaia moved for a new trial on the ground that House confessed to a fellow inmate that he was responsible for the shooting. But when this inmate refused to testify, the trial court denied the motion for new trial because there was no evidence to support it. Tiliaia now appeals his conviction and sentence.

## ANALYSIS

### I. Exclusion of Witness Testimony

¶ 7 Tiliaia first argues the trial court abused its discretion and violated his Sixth Amendment and Due Process rights by excluding Marco Etsitty's testimony. While it is true that trial courts have great discretion in case management issues, and thus, we do not interfere absent an abuse of discretion, *see Berrett v. Denver & Rio Grande W. R.R. Co.*, 830 P.2d 291, 293 (Utah Ct.App.), *cert. denied*, 836 P.2d 1383 (Utah 1992), "a trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor." *Taylor v. Illinois*, 484 U.S. 400, 414, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). Nonetheless, in certain cases a sanction of exclusion for a discovery violation is "entirely consistent with the purposes of the [Sixth Amendment]." *Id.* at 415, 108 S.Ct. 646. "Excluding a witness from testifying is, however, 'extreme in nature and ... should be employed only with caution and restraint.'" *Berrett*, 830 P.2d at 293 (quoting *Plonkey v. Superior Court*, 106 Ariz. 310, 475 P.2d 492, 494 (1970) (omission in original)).

¶ 8 The trial court here appropriately employed this harsh sanction. After thoroughly questioning why several defense witnesses were not identified on the witness list, the trial court used restraint in applying the sanction to only one witness, Etsitty, who it appeared was deliberately omitted from the witness list given that he was interviewed and subpoenaed three weeks prior to trial. *Cf. Taylor*, 484 U.S. at 414, 108 S.Ct. 646 ("It is ... reasonable to presume that there is something suspect about a defense witness who is not identified until after the 11th hour has passed."). The trial court did not exclude the testimony of any of the other newly-disclosed witnesses, giving the defense the benefit of the doubt that the selection of these witnesses was, indeed, a legitimate last-minute tactical decision.

¶ 9 However, even if there were error in applying this sanction, reversal is required only "if the error was prejudicial to the substantial rights of a party." *Berrett*, 830 P.2d at 293. "[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). We determine that any error here was harmless. Etsitty's testimony was largely cumulative with

that of Steven Butler, who testified that he, too, saw a black man shooting toward the house. Moreover, because the existence of a second gunman does not appear to have been in dispute, having a second witness testify that a black man was shooting toward the house does not seem a crucial part of Tiliaia's defense—it surely does not lead to the conclusion that Tiliaia was *not* shooting toward the house.[2] Tiliaia claims in his brief that Etsitty would also have testified that Tiliaia's two friends threatened to kill Etsitty for testifying in Tiliaia's defense. The proffer made at trial, however, was only that Etsitty would have testified that the friends threatened him if he said anything to the police *about the two of them.* Thus, the testimony would not have led to the suggested inference that the friends wanted Tiliaia to take the blame for them, but rather that they simply wanted to stay completely off law enforcement's radar—the latter consideration not much impacting Tiliaia's defense. Considering all these factors, we determine that any alleged error was harmless beyond a reasonable doubt. *See id.* (listing factors for evaluating harmless error, including "whether the testimony was cumulative" and "the importance of the witness'[s] testimony in the [defense]'s case").

## II. Prosecutorial Misconduct

¶ 10 Tiliaia alleges prosecutorial misconduct for various statements made during closing arguments. "A prosecutor's comments constitute misconduct when they call the jurors' attention to matters not proper for their consideration and when the comments have a reasonable likelihood of prejudicing the jury by significantly influencing its verdict." *State v. Pearson,* 943 P.2d 1347, 1352 (Utah 1997).

¶ 11 We determine that the prosecutor's statements would not have been likely to significantly influence the verdict. The prosecutor remarked that the jury served "as the voice and the conscience of this community," and that if Tiliaia was found not guilty "it is as true to say that there has been no crime." Tiliaia alleges further misconduct in the prosecutor's summary of one witness's testimony.[3] These comments, even if improper, were not particularly significant, and we think it highly unlikely that Tiliaia would have received a more favorable result were these statements omitted from the prosecutor's closing arguments. *See id.* ("If the prejudice is such that there is a reasonable likelihood the jury would have reached a more favorable result absent the comments, we will reverse."). Thus, this argument fails for lack of demonstrated prejudice.

## III. Ineffective Assistance of Counsel

¶ 12 Tiliaia argues that his defense counsel rendered ineffective assistance by failing to include Etsitty on the defense witness list and by failing to object to one of the above statements made by the prosecutor during closing argument. To establish ineffective assistance of counsel, Tiliaia must show (1) that counsel's performance was deficient and (2) that the deficient performance was prejudicial. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because we have already determined that the exclusion of Etsitty's testimony and the prosecutor's closing argument statements were ultimately harmless, Tiliaia cannot establish that counsel's performance, even if deficient, was prejudicial. Therefore, this claims also fails.

## IV. Hearsay

¶ 13 Tiliaia's final claim is that the trial court erred in deciding that James Storm's hearsay statement did not fit the

---

2. Tiliaia's gun was a .25 caliber semi-automatic and the bullets removed from the victims' bodies were exclusively of that caliber. But when inspecting the residence after the crime, the police also recovered bullets and casings from a nine-millimeter gun. Thus, it was largely undisputed at trial that there was a second gunman shooting toward the house.

3. In closing argument, defense counsel suggested that "the black guy" was the man who asked Tiliaia for the gun and who ultimately shot the victims. Defense counsel also stated that "the black guy" and Tiliaia ran out of the house together. On rebuttal, the prosecutor clarified that a witness who testified on this point had stated that Tiliaia went out of the house while the man who asked for the gun remained in the house.

excited utterance exception. "Our standard of review on the admissibility of hearsay evidence is complex, since the determination of admissibility 'often contains a number of rulings, each of which may require a different standard of review.'" *State v. Workman,* 2005 UT 66, ¶ 10, 122 P.3d 639 (quoting Norman H. Jackson, *Utah Standards of Appellate Review,* 12 Utah Bar J. 8, 38 (1999)). Questions of law within the determination of admissibility are reviewed for correctness, while questions of fact are reviewed for clear error. *See id.* Assuming correct application of the law to facts free from clear error, "we review the district court's ruling on admissibility for abuse of discretion." *Id.*

¶ 14 The excited utterance exception allows the admission of a hearsay statement "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Utah R. Evid. 803(2). Thus, the test of whether a statement fits the exception is threefold:

> First, an "event or condition" must occur that is sufficiently startling to cause an excitement that stills normal reflective thought processes. Second, the declarant's declaration must be a spontaneous reaction to the event or condition, not the result of reflective thought. Third, the utterance must relate to the startling event.

*State v. Smith,* 909 P.2d 236, 239 (Utah 1995). In the instant case, the parties agree that the first and third requirements were met, but differ as to whether there was a sufficient showing as to the second requirement.

¶ 15 The trial court determined that Tiliaia did not meet his burden of providing an adequate foundation to establish that the statement qualified as an excited utterance. *Cf. David v. Pueblo Supermarket of St. Thomas,* 740 F.2d 230, 235 (3d Cir.1984) ("The burden of establishing the facts which qualify a statement as an excited utterance rests with the proponent of the evidence."). The court noted that "despite the fact that counsel used exclusively leading questions to try to elicit from the witness that there was a spontaneous component to the statement he heard from another individual, that did not come out." After apparently considering many factors, the court specifically justified its decision by noting, "The best we heard is that someone may have been startled and there is a discrepancy as to what the timing of the statement was, whether it was some 9 to 12 minutes after the episode or whether it was the next day."

¶ 16 We determine the trial court's conclusion that adequate foundation had not been laid was not an abuse of discretion. Although the witness testified that Storm placed the phone call minutes after the shooting, he also admitted that he initially told the police he did not speak with Storm until the following day. Such a time gap provides ample opportunity for reasoned reflection and would certainly remove the comments from the excited utterance exception absent extraordinary circumstances. *See State v. Cude,* 784 P.2d 1197, 1200 (Utah 1989) ("Generally, the shorter the gap between the startling event and the utterance, the more reliable the statement since the excitement of the event is unlikely to have yielded to reasoned reflection and conscious fabrication.").

¶ 17 Even had Tiliaia established that the call was placed only nine minutes after the shooting, this fact alone would not qualify the statement as an excited utterance. *See id.* at 1200–01 (affirming a finding that excited utterance exception did not apply when the time between the startling event and the declaration was only five to ten minutes). "[T]he length of time between the event and the declaration is not a yardstick by which reliability can be measured. The more accurate gauge—and the more difficult to read—is the state of the declarant's mind." *Id.* at 1200 (footnote omitted). Thus, Tiliaia cannot meet his burden by simply showing that the time of the call was mere minutes after the event. Instead, as the proponent of the statement he must convince the trial court that Storm was still under the stress of the excitement caused by the shooting and that he therefore did not have time for reasoned reflection between the event and the declaration.

¶ 18 While the witness did testify that the declarant was "startled," "stuttering," "screaming," and "yelling," the simple showing of an emotional reaction is insufficient to meet the excited utterance exception. "[T]he [declarant]'s emotional reaction here could very well have been the result of retelling the incident, rather than a result of remaining continuously under the original stress. Emotionalism ... does not make the recounting an excited utterance." *West Valley City v. Hutto,* 2000 UT App 188, ¶ 22 n. 8, 5 P.3d 1. In other words, Tiliaia had the burden to show that the statement was made while Storm was still under the *original* excitement of the shooting.

¶ 19 Furthermore, although it is entirely possible such a showing might have been made given what we know about this case, no such showing was in fact made. Even if the trial court had found the witness credible and determined that only nine minutes had elapsed between the event and the declaration, no evidence was presented to show that Storm did not have time for reasoned reflection during the period after the shooting but before he took the occasion to place a phone call and made the declaration. All that was presented to the court was the testimony that Storm placed the call as he was walking away from the party. Indeed, the statement that Storm had simply been walking away from the party—and only as a witness; not as an adrenaline-charged perpetrator of the crime fleeing from the police or a victim of the crime in the throes of pain—tends to indicate at least some time for reasoned reflection. " 'The theory of [the excited utterance exception] is simply that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication.' " *State v. Cude,* 784 P.2d 1197, 1199–1200 (Utah 1989) (quoting Fed.R.Evid. 803(2) advisory committee's note (citation omitted)). Tiliaia did not meet his burden of establishing that at the time of the phone call Storm's capacity for reflection was repressed by the excitement of the shooting. Therefore, the trial court did not abuse its discretion in determining that a proper foundation had not been laid.

## CONCLUSION

¶ 20 The trial court did not abuse its discretion in prohibiting the testimony of Etsitty, and such omission did not affect the outcome of the proceedings. Further, any prosecutorial misconduct was ultimately harmless. Thus, the ineffective assistance of counsel claims rooted in these same alleged errors were not prejudicial to Tiliaia. Finally, the trial court did not abuse its discretion in determining that adequate foundation had not been laid to qualify Storm's hearsay statement as an excited utterance.

¶ 21 Affirmed.

¶ 22 WE CONCUR: RUSSELL W. BENCH, Presiding Judge and JUDITH M. BILLINGS, Judge.